**UNITED STATES of America, Appellee,**

v.

**George REMINI, Defendant–Appellant.**

**No. 1502, Docket 92–1033.**

United States Court of Appeals,
Second Circuit.

Argued May 11, 1992.

Decided June 18, 1992.

John L. Pollok, New York City (Hoffman & Pollok, Susan C. Wolfe, Michael Rosen, of counsel), for defendant-appellant.

Laura A. Ward, Brooklyn, N.Y., Asst. U.S. Atty. E.D. New York (Andrew J. Maloney, U.S. Atty. E.D. New York, Peter A. Norling, Emily Berger, Asst. U.S. Attys., of counsel), for appellee.

Before: FEINBERG and CARDAMONE, Circuit Judges, LARIMER, District Judge.*

FEINBERG, Circuit Judge:

George Remini appeals from a judgment of conviction entered in January 1992 in the United States District Court for the Eastern District of New York, John R. Bartels, J., after a jury found Remini guilty of criminal contempt in violation of 18 U.S.C. § 401(3). Judge Bartels sentenced Remini to 16 months imprisonment, three years supervised release, a fine of $30,000 and a special assessment of $50. Remini challenges his conviction on the grounds that: the district court applied the wrong definition of willfulness in charging the jury and in admitting and excluding evidence; the court expressed open hostility to defense counsel during summation and thereby deprived the defense of a fair trial and of effective assistance of counsel; at the time he was ordered to testify, Remini was inadequately immunized for his testimony; at sentencing, the court erroneously applied the guideline base offense level for Obstruction of Justice instead of for Failure to Appear by a Material Witness; and at sentencing, the court erroneously denied Remini a two-level reduction for acceptance of responsibility. Remini is presently on $1 million bail pending appeal.

For the reasons given below, we affirm.

### Background
#### The Gambino Trial

Remini's indictment and conviction resulted from his refusal to testify in November 1989 at the trial of *United States v. Thomas Gambino*, 89 Cr. 431, in the Eastern District of New York, Jack B. Weinstein, J. The indictment in that case charged Gambino with giving false, evasive and misleading testimony to a grand jury, in violation of 18 U.S.C. § 1503. During the trial, Judge Weinstein ruled that literally true but evasive and misleading testimony would support prosecution of Gambino for obstruction of justice. When the government called Remini to testify, Remini moved to quash the trial subpoena, claiming that the government intended to ask him questions derived from illegal electronic surveillance. He also claimed that his immunity order was inadequate under the Fifth Amendment because the government had maintained the position in the *Gambino* trial that literally true but misleading answers given under an immunity order would be subject to prosecution. Judge Weinstein denied Remini's motion to quash.

After the court had immunized Remini pursuant to 18 U.S.C. § 6002 and directed him to answer questions, he refused to testify, asserting that he wished to litigate his opposition to the subpoena on appeal. The court advised him that if he persisted in refusing to testify without just cause, he would be subject to immediate incarceration for civil contempt and to a prosecution for criminal contempt. Remini persisted and the court ordered him confined for civil contempt. He was released from custody after the government rested its case in the

* Honorable David G. Larimer, United States District Judge for the Western District of New York, sitting by designation.

*Gambino* trial, which ultimately resulted in an acquittal.

### Pre-trial Proceedings

In January 1991, a grand jury indictment was filed, charging Remini with criminal contempt for his failure to testify at the *Gambino* trial. Remini moved to dismiss the indictment on the ground that exculpatory evidence—that he had acted on advice of counsel—had been withheld from the grand jury. He also repeated his claims that he received inadequate immunity at the *Gambino* trial and that illegal electronic surveillance had led to his subpoena. In an opinion filed in May 1991, Judge Bartels denied the motion in its entirety, finding that exculpatory evidence had not been withheld from the grand jury since advice of counsel is not a defense to contempt, and rejecting the claims of inadequate immunity and of illegal surveillance as well.

### The Remini Trial

Consistent with his earlier ruling, Judge Bartels precluded Remini at trial from either arguing or presenting evidence of good faith reliance on advice of counsel. The court also granted the government's application to redact the portions of the transcript of the *Gambino* trial in which Remini stated that he relied on advice of counsel, and ruled that Remini could not comment upon the redacted portions or "[t]here is no point in redacting."

After the government had presented its case, the court refused to permit Remini to present evidence that would show that Remini believed in good faith that he was complying with the contempt statute and had intended to demonstrate that on appeal. The court concluded that these exhibits were irrelevant because whether Remini intended to violate the statute "is immaterial, if he intended knowingly and consciously to violate [J]udge Weinstein's order." The defense subsequently rested without presenting evidence and summations followed. The court instructed the jury that "willfully" means that the defendant understood the court order and consciously refused to obey it, adding that it would not be a defense if the defendant acted on the advice of counsel. The court then denied defense counsel's motion for a mistrial based on the manner in which the

court had addressed him during his summation. In June 1991, the jury found Remini guilty as charged.

### Sentencing

Remini's sentencing hearing was held in January 1992. Section 2J1.1 of the Guidelines, which applies to violations of 18 U.S.C. § 401, states that the court should apply § 2X5.1. Section 2X5.1 states that the court is to apply "the most analogous offense guideline." The Probation Department concluded in its Presentence Report that the most analogous Guideline was U.S.S.G. § 2J1.2, for Obstruction of Justice, and the government agreed with the Presentence Report. Remini, on the other hand, contended that the appropriate Guideline was § 2J1.5, for Failure to Appear by a Material Witness.

The court agreed with the Probation Department and the government and applied section 2J1.2, the Guideline for Obstruction of Justice. The court had earlier determined that "[t]here was an intent to obstruct justice," basing this determination on a taped conversation that the government had presented to the court in which John Gotti told a third party that he had instructed his lawyers to "[g]et my cell ready, get Joe Butch's cell ready; and get Fat Georgie's [Remini's] cell ready. And nobody is taking the stand. Tell them to go fight! Don't worry about it." Judge Bartels found specifically that "the electronic intercepted conversations between John Gotti and Mr. Remini indicates a lack of good faith on the part of Mr. Remini." The judge did reject, however, the Probation Department and government recommendation of a three-level increase under U.S.S.G. § 2J1.2(b)(2) for substantial interference with the administration of justice as well as their recommendation of an upward departure under U.S.S.G. § 5K2.9. Judge Bartels also denied Remini a two-level reduction in his sentence for acceptance of responsibility. Remini's base offense level was therefore 12, which produced a guideline imprisonment range of 10 to 16 months. As noted above, the court sentenced Remini to 16 months imprisonment, three years supervised release, a fine of $30,000 and a special assessment of $50.

## Discussion

### The Definition of Willfulness

The trial court ruled that the intent element of criminal contempt is satisfied by proof of willful disobedience of a court order and that good faith reliance on advice of counsel does not constitute a defense to such willful disobedience. As discussed above, the court accordingly redacted as irrelevant the arguments of Remini's counsel at the *Gambino* trial and excluded other evidence showing why Remini refused to testify at that trial. At the end of Remini's trial, the court charged the jury that

> [t]he fourth element of the offense of contempt is that the defendant acted knowingly and willfully.... In order to be guilty of criminal contempt, therefore, it is essential that the defendant acted with a specific intent and that he willfully disobeyed or disregarded the order of the court. * * *
>
> It is not a defense to the offense of contempt that the defendant acted on the advice of an attorney....
>
> Good faith is only a defense ... where the defendant has made a reasonable effort to comply with a court order but has failed because of the indefiniteness of the order or some other inability to do so. It is not a defense where the defendant has refused to comply with the order he is charged with violating.

Appellant claims that good faith reliance on advice of counsel is a defense to criminal contempt and that willfulness is negated by a good faith refusal to testify. He therefore argues that the district court's charge on willfulness was erroneous. Remini cites two circuit court cases in support of the proposition that "[w]illfullness, for the purpose of criminal contempt, does not exist where there is a '[g]ood faith pursuit of a plausible though mistaken alternative.'" *United States v. Greyhound Corp.*, 508 F.2d 529, 532 (7th Cir.1974) (citation omitted); *Waste Conversion, Inc. v. Rollins Environmental Services (NJ), Inc.*, 893 F.2d 605, 609 (3d Cir.1990) (in banc) (citation omitted). Appellant also cites the Supreme Court's recent decision in *Cheek v. United States*, — U.S. —, 111 S.Ct. 604, 610–11, 112 L.Ed.2d 617 (1991), which held that a good faith misunderstanding of the law is a defense in a tax prosecution, and argues that *Cheek* compels the definition of willfulness that he has set forth.

We do not find these arguments persuasive. We begin by noting that it is the established law of this circuit that "advice of counsel is not a defense to the act of contempt, although it may be considered in mitigation of punishment." *United States v. Goldfarb*, 167 F.2d 735, 735 (2d Cir.1948) (per curiam). Accord *United States v. Underwood*, 880 F.2d 612, 618–19 (1st Cir. 1989); *United States v. Armstrong*, 781 F.2d 700, 707 (9th Cir.1986). Moreover, this court has more recently announced that

> '[T]he crime of criminal contempt requires a specific intent to consciously disregard an order of the court.' ... There is no requirement that the defendant be shown to have known of, and intended to violate, the statute which makes it a crime to consciously disregard an order of the court. In essence, [the defendant] sought a charge to the effect that ignorance of 'the law' would be a defense. Judge Bartels was correct in refusing to give such a charge.

*United States v. Berardelli*, 565 F.2d 24, 30 (2d Cir.1977).[1]

Under our precedents, Judge Bartels was again correct in this case in refusing to give such a charge and in excluding evidence regarding Remini's reasons for refusing to obey the court's order. The Supreme Court has evidenced similar approval for this understanding of the definition of "willfulness" in the law of contempt. In *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971), for example, the Court stated that it has

> consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order ... prior

---

1. Judge Bartels was also the trial judge in *Berardelli*.

to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal.

As the government argues, permitting the jury to consider the defense to contempt urged by Remini would encourage resistance to court orders, thereby delaying and sometimes denying altogether the fair and orderly administration of the law.

Finally, Remini's reliance on *Cheek v. United States* is misplaced. While granting defendants in tax cases a good faith defense, the Supreme Court recognized that "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." 111 S.Ct. at 609. It was "largely due to the complexity of the tax laws" and "[t]he proliferation of statutes and regulations [that] has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws," *id.*, that the Supreme Court recognized an exception to the general rule. *Id.* There is nothing so complex about the law of contempt as to set it apart from the rest of the criminal law to which "ignorance ... is no defense." *Id.* at 609. We therefore find that the district court's evidentiary rulings and charge on "willfulness" were entirely correct.

*Judicial Conduct During Summation*

■ Appellant next urges that the district court evidenced a "hostile and abusive attitude" towards defense counsel that denied defendant the effective assistance of counsel and a fair trial, requiring reversal of defendant's conviction. Appellant argues specifically that during defense counsel's summation, the district court, by "repeated instruction to the jury that everything defense counsel said was either immaterial or irrelevant," conveyed to the jury the court's belief that the defendant was guilty. Appellant contends that the judge also yelled at defense counsel and addressed defense counsel in "increasingly threatening tones." Because we have only the cold record before us and cannot listen to the district judge's voice to determine

the propriety of its tone or volume, see *United States v. Robinson*, 635 F.2d 981, 984–85 n. 2 (2d Cir.1980), cert. denied, 451 U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852 (1981), we must turn to the written trial transcript to discover whether the judge's rulings and instructions to the jury were in any way improper.

■■ Defense counsel began his summation by arguing that although Remini deliberately refused to testify, his intent was not to commit a criminal contempt: "[w]here we disagree is on Georgie Remini's state of mind, willfully, what was in his head." As we have determined above, the district judge appropriately ruled that the government did not have to show Remini's bad intent in order to prove willfulness in criminal contempt and that Remini's intent not to commit a crime or his reliance on advice of counsel could not be a defense. The judge therefore properly sustained the government's objection to discussion of Remini's state of mind in this respect and instructed the jury accordingly. The judge properly sustained an objection to defense counsel's further continuation, in spite of the judge's ruling, of the "state of mind" line of argument.

Defense counsel next began to speculate that Remini had hired an attorney because he did not intend to commit criminal contempt, thereby introducing (while denying that he was introducing) the legally irrelevant advice of counsel defense. The judge then properly instructed the jury that "[t]his is all irrelevant to the issues in this case. I don't know the reasons why a person hires or doesn't hire a lawyer." During the discussion of Remini's hiring of a lawyer, defense counsel handed out to the jury the transcript of Remini's redacted testimony at the *Gambino* trial and commented upon the number of redactions:

There are five blank lines. You cannot speculate what's in those five blank lines, although—and I don't want you to speculate. You can't guess. You can't figure out what was there. Mr. Picozzi[2] told you, however, when I asked him, that these pages were filled up original-

2. Picozzi was the court reporter at the *Gambino* trial and a witness at Remini's trial.

ly. People are talking. His Honor has taken certain things out, left certain things in, so you can't guess what's in those five lines.

But you see that after those five lines, you see what Mr. Remini says. What does he say?

He says, "on the advice of counsel," and again I am not arguing to you that he should be found not guilty because his lawyer told him what to do.

Of course, as any reader can discern, that is *exactly* what defense counsel was arguing to the jury, in spite of the fact that the judge had ruled that defense irrelevant and had specifically redacted that portion of the transcript.

Counsel then discussed Remini's state of mind again, submitting that Remini's statements expressed fear and concern. The government rightly objected to this return to irrelevant considerations, and the court sustained the objection, instructing the jury that "[f]ear is irrelevant." Next, and perhaps most improper, defense counsel repeatedly argued to the jury during summation that since the government had not prosecuted Remini for perjury, the jury could infer that Remini was not lying when he testified that he believed he did not have a legal obligation to take the stand. The government correctly objected to this argument because it was premised on the nonexistent good faith defense to criminal contempt. The court cautioned counsel to stop pressing the irrelevant arguments. Defense counsel insisted, however, that "I don't believe that's irrelevant," to which the court, with considerable restraint, responded, "Well, that's irrelevant. I rule that it is." Even after this colloquy, defense counsel persisted in pursuing the argument. The court rightly chided him for ignoring the court's orders.

Finally, counsel argued that Remini had appealed to the court of appeals from Judge Weinstein's order to Remini to answer questions, although Judge Bartels had already ruled that whether a notice of appeal had been filed was irrelevant. An objection followed and the court properly sustained it.

In his closing instructions, the judge told the jury that his rulings and comments in no way indicated his opinion of facts and that the jury is the only trier of facts. Despite provocation, the district judge conducted himself properly, ruling appropriately on objections and attempting to stop defense counsel from ignoring his rulings. We cannot conclude that the actions of the district judge during defense counsel's summation in any way merit reversal of the conviction.

*Adequate Immunity*

■ Appellant next claims that the immunity afforded him at the *Gambino* trial was inadequate and that he was therefore illegally compelled to testify. He argues that the immunity he received from Judge Weinstein was qualified by the judge's earlier ruling during the *Gambino* trial that Gambino's literally true but misleading or evasive testimony would support a prosecution for obstruction of justice. This earlier ruling, according to appellant, restricted the immunity that he was granted and exposed him to prosecution for crimes other than "perjury, giving a false statement, or otherwise failing to comply with the order [of immunity]," those crimes set forth as exceptions to required use immunity under 18 U.S.C. § 6002.

In turning to the grant of immunity itself, we observe that when Remini had refused to testify, Judge Weinstein ordered him to do so, "pursuant to 18 U.S.C. § 6002." The judge did not in any way qualify his ruling or refer to other rulings issued in connection with the *Gambino* case or in connection with any other case. In the absence of any such qualification or reference, we take Judge Weinstein's order at face value and find that it provided Remini with exactly that degree of immunity provided by the statute referred to, 18 U.S.C. § 6002: not more, not less.

If Remini is correct that § 6002 prohibits later prosecution for literally true but misleading testimony, then he would have prevailed over the government had he taken the stand as he was ordered to do and had the government subsequently tried to prosecute him for offering misleading but liter-

ally true testimony. If Remini is not correct, however, and the exceptions to § 6002 include prosecution for misleading but literally true testimony, then he could *appropriately* have been prosecuted had he taken the stand and given misleading but literally true testimony. Either way, whether Remini could have ultimately been prosecuted for giving misleading testimony is immaterial in assessing the validity of Judge Weinstein's order to Remini to testify because his order referred only to the statute, "§ 6002." Because it is not relevant to the evaluation of Remini's particular grant of immunity, we decline on this appeal to reach the issue of the scope of § 6002, and we find that the order in question satisfied both § 6002 and the Constitution. See *Kastigar v. United States,* 406 U.S. 441, 460–61, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972); cf. *United States v. Gallo,* 859 F.2d 1078, 1090 (2d Cir.1988) (Van Graafeiland, J., concurring), cert. denied, 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989).

*Appropriate Sentencing Guideline*

▉ We next must calculate whether Remini was sentenced under the appropriate Guideline. The Guideline Index indicates that section 2J1.1 is the appropriate Guideline for violations of 18 U.S.C. § 401. This section, however, does not provide a Guideline for criminal contempt. Instead, it gives a cross reference that requires the application of Guideline 2X5.1, a Guideline which states that "[i]f ... no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553(b) shall control." The district court found that the Obstruction of Justice Guideline, U.S.S.G. § 2J1.2, was the most analogous, and it therefore rejected Remini's claim that the most analogous Guideline was 2J1.5, the Guideline for Failure to Appear by a Material Witness.

Remini argues on appeal that we should adopt the First Circuit's holding in *United States v. Underwood,* 880 F.2d 612 (1st Cir.1989), that in a case of criminal contempt for failure to testify at a criminal trial, the most analogous Guideline is 2J1.5. Remini continues that since Obstruction of Justice requires proof of bad faith while criminal contempt—according to the district court—does not, it would be unfair to apply § 2J1.2. Such application, Remini claims, penalizes the contemnor as though she or he had evidenced a level of intent that the government was not required to prove and that the defendant was not given the opportunity to contest.

Appellant's argument has a surface appeal that disappears on further analysis. First, we note that the Commentary to section 2J1.1 explicitly states that "[i]n certain cases, the offense conduct will be sufficiently analogous to § 2J1.2 (Obstruction of Justice) for that guideline to apply." Clearly, then, the Guidelines contemplate application of the Obstruction of Justice Guideline to criminal contempt in some instances. In *Underwood,* moreover, the First Circuit did not hold that whenever a contemnor has disobeyed an order to testify, the appropriate Guideline is the one reserved for failure of a material witness to appear. Quite to the contrary, *Underwood* was a special case. "Underwood, according to the district court's express findings, did not intend to 'obstruct justice;' he simply intended not to testify." 880 F.2d at 620. In our case, in contrast, Judge Bartels specifically found the opposite at sentencing: that Remini intended to obstruct justice. While the distinction between good faith and bad faith in this sense is, as we have found, irrelevant for purposes of conviction, it appropriately plays a central role in choosing an applicable Sentencing Guideline in cases of criminal contempt. See, e.g. *Goldfarb,* 167 F.2d at 735. Because the district court found that Remini intended to obstruct justice, the court's choice of the Obstruction of Justice Guideline was not in error.

*Two–Point Reduction*

▉ Appellant finally claims that because he admitted in his statement to the Probation Department that he had refused to testify, and because the trial court ruled that his reasons for refusing were irrelevant, he effectively admitted all essential

elements of the crime of contempt and should have received a two-point credit for acceptance of responsibility.

■ We note first that a sentencing court's evaluation of whether a defendant has accepted responsibility "is entitled to great deference on review" because of the court's "unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n. 5); *United States v. Woods*, 927 F.2d 735, 735 (2d Cir.1991) (per curiam). Under 18 U.S.C. § 3742(d), this court must accept the district court's fact findings unless they are clearly erroneous. This standard of review applies to determinations of acceptance of responsibility under U.S.S.G. § 3E1.1. See *United States v. Charria*, 919 F.2d 842, 849 (2d Cir.1990), cert. denied, — U.S. ——, 112 S.Ct. 62, 116 L.Ed.2d 38, 112 S.Ct. 62 (1991).

In light of the standard articulated above, we cannot say that Judge Bartels's determination that Remini did not accept responsibility for his actions was clearly erroneous. Although the trial court ruled that Remini's alleged reasons for refusing to testify did not establish a defense, it does not follow from this legally sound ruling that Remini accepted responsibility for committing the crime in question. Quite to the contrary, he insisted that he was entitled to act as he did and continues to insist the same on this appeal. We therefore find that the district judge's refusal to grant Remini a reduction for acceptance of responsibility was reasonable and should be affirmed. We have considered all of appellant's remaining arguments and find them to be without merit.

Affirmed.