UNITED STATES of America, Plaintiff,

v.

Wiley MOORE, Defendant.

No. 95–30034.

United States District Court,
C.D. Illinois,
Springfield Division.

Jan. 5, 1996.

Rodger A. Heaton, Asst. U.S. Attorney, Springfield, IL, for plaintiff.

David B. Mote, Asst. Federal Public Defender, Springfield, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge:

The Sentencing Guidelines.

Did this criminal contempt amount to obstruction of justice?

Let us see.

### I. Background

In the early 1990's, the Government began to investigate one Howard Furkin regarding his activities surrounding the operation of an illegal gambling business.

In the latter part of 1991, Defendant Wiley Moore—an employee of Howard Furkin—entered into an agreement with the Government. Moore agreed to provide truthful and complete information and the Government agreed not to subpoena Moore as a witness in their case against Furkin as well as not to disclose Moore's identity as a Government informant.

In January of 1992, Moore became a paid informant of the Government and was thereafter paid approximately $3,200 for his services as an informant.

In March of 1993, special agents of the IRS executed a search warrant on Furkin's office. During the course of the search, the agents located several firearms, including a sawed-off shotgun. Moore, while acting still as a Government informant, informed the federal agents that the sawed-off shotgun was not owned by Furkin. Rather, Moore claimed that he found the weapon in his residence and placed the weapon in Furkin's office closet.[1] That story admittedly was a lie.[2]

After being granted immunity, Moore stated to the Government that he fabricated the story because Furkin asked him to lie and that he was afraid of and intimidated by Furkin.[3] In June of 1994, Moore testified before the grand jury. As part of the immunity agreement, Moore agreed to provide truthful testimony. Moore testified that he lied previously to federal agents regarding the sawed-off shotgun because Furkin asked him to lie. Furkin was then indicted for possessing an unregistered sawed-off shotgun.

In the case of *United States v. Furkin*, No. 94–30030 (C.D.Ill. April 11, 1995), Furkin was found guilty by a jury of possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d) and § 5871.[4] During

---

1. Moore's residence was owned by Furkin. Prior to Moore, another individual associated closely with Furkin resided at the home. Moore claimed that he was aware that the first tenant owed Furkin money and that he believed the weapon was owned by this tenant. He claimed further that he found the weapon in the attic and, assuming it to be the property of the first tenant, placed it in Furkin's closet.

2. The Government was suspicious of Moore's story. They asked him to identify the weapon from a photo line-up. He was unable to identify the weapon.

3. Moore informed the Government that Furkin made intimidating statements. He also stated that on one occasion someone fired guns in front of his home and that someone placed a can of paint sealant surrounded by crumpled newspapers next to his furnace. Moore suspects that Furkin was involved in both of the aforementioned acts.

4. In January of 1995, Furkin was found guilty by a jury of operating an illegal gambling business, 18 U.S.C. § 1955, conspiring to defraud the IRS, 18 U.S.C. § 371, unregistered transactions in gambling devices, 15 U.S.C. § 1173(a)(3) and § 1176, obstructing justice, 18 U.S.C. § 1503, and witness tampering, 18 U.S.C. § 1512(b)(1). *United States v. Allstar Music, Inc.*, No. 94–30014 (C.D.Ill.1995). The Court granted a new trial on the operating an illegal gambling business count.

the course of the trial, the Government subpoenaed Moore to testify against Furkin. Prior to being called as a witness, Moore informed the Government on more than one occasion that he was reluctant to testify because he was afraid of Furkin. When called to the stand, Moore refused to testify. Moore was held in contempt and placed in jail for the remainder of the trial.

On June 8, 1995, Moore was indicted for refusing to testify at trial in violation of 18 U.S.C. § 401(3). Moore plead guilty to the single-count indictment.

## II. Discussion

This matter is presently before the Court regarding the sentencing of Moore for criminal contempt, *i.e.*, failing to testify during the trial of Furkin. The sole issue at sentencing focuses on the Sentencing Guideline base offense level applicable to Moore's conduct. The Guideline index indicates that § 2J1.1 is the appropriate guideline for violations of 18 U.S.C. § 401. Section 2J1.1, however, does not provide a guideline for criminal contempt. Instead, it provides a cross reference to § 2X5.1 which directs the court—in the event no express guideline has been promulgated—to apply the most analogous offense guideline.[5] The Presentence Investigation Report (PIR) concludes that the most analogous offense guideline is found at § 2J1.5— "Failure to Appear by Material Witness." The Government disagrees, however, arguing that the most analogous offense guideline is § 2J1.2—"Obstruction of Justice."

The Court agrees with its Probation Officers.

The base offense level for *obstructing justice* is 12, while the base offense level for *failing to appear by a material witness* is only 6. Thus, there is a good deal at stake here.

■ The Court is aware of only three cases that have discussed this particular issue. In *United States v. Underwood,* 880 F.2d 612 (1st Cir.1989), the First Circuit (in a decision written by now U.S. Supreme Court Associate Justice Stephen G. Breyer) focused on the intent of the defendant. Because the district court concluded that there was no evidence that the defendant intended to obstruct justice, and that he simply intended not to testify, the First Circuit held that the defendant "intended only to 'fail to appear' as a 'material witness.'" *Id.* at 620. Accordingly, the base offense level applicable to § 2J1.5—Failure to Appear by Material Witness—was the most analogous guideline. *Id.*

In *United States v. Remini,* 967 F.2d 754 (2nd Cir.1992), the Second Circuit held that the most analogous guideline was § 2J1.2— Obstruction of Justice. The Second Circuit, however, did not disagree with Judge Breyer's analysis in *Underwood.* Indeed, the court also focused on the intent of the defendant. *Id.* at 760. In that case, however, there was evidence that the defendant intended to obstruct justice.[6] Thus, the Second Circuit agreed with the district court that the evidence established bad faith or an intent to obstruct justice on the defendant's part. *Id.* Accordingly, § 2J1.2—Obstruction of Justice—was the most analogous guideline on the facts of that case. *Id.*

Finally, in *United States v. Herre,* 731 F.Supp. 1051, 1053 (S.D.Fla.1990), the district court applied § 2J1.5—Failure to Appear by Material Witness—noting that the Government failed to present any evidence showing that the defendant's conduct "was designed to interfere with the administration of justice." In *Herre,* the defendant refused to testify before the grand jury out of fear for the safety of himself and his wife. *Id.* at 1052.

As recognized by the three courts which have considered the issue, and implicitly by the Sentencing Guidelines, the resolution of

---

**5.** Section 2X5.1 also provides that if no sufficiently analogous guideline exists, the provisions of 18 U.S.C. § 3553(b) control. Section 3553(b) grants generally the court considerable discretion in imposing a sentence.

**6.** *Remini* was a spin-off of the John Gotti prosecution. In *Remini,* the district court heard recordings of intercepted telephone conversations between Gotti and a third party and Gotti and Remini. *Id.* at 756. The district court concluded that the telephone conversations evidenced "a lack of good faith" on Remini's part to testify at trial. *Id.*

the instant issue necessitates a fact-intensive inquiry. And, as also recognized by those courts, the inquiry focuses on the defendant's intent for refusing to testify. If the defendant's refusal to testify was motivated by an improper purpose, *i.e.*, an intent to obstruct justice, § 2J1.2 will likely apply. However, if the defendant had a "good" reason for not testifying, *i.e.*, a reason not motivated by an intent to obstruct justice, § 2J1.5 will likely apply.

■ Here, the Government did not produce any evidence that Moore's refusal to testify at Furkin's trial was motivated by an intent to obstruct justice. To the contrary, all the evidence indicated clearly that Moore refused to testify due to his fear of Furkin. Indeed, in the trial and collateral proceedings related to the prosecution of Furkin—which included a conviction for obstruction of justice and witness tampering—the Government stressed Furkin's propensity for violence and focused explicitly on Furkin's threats and intimidation tactics directed at Moore.

At the sentencing hearing, in support of their position that Moore intended to obstruct justice at Furkin's trial, the Government focused on the circumstances surrounding Moore's initial lie to the IRS agents regarding the sawed-off shotgun. By way of review, upon execution of a search warrant, IRS agents discovered a sawed-off shotgun in Furkin's office closet. Moore—while acting as a paid Government informant—lied to the IRS agents by stating that he placed the firearm in the closet and believed that the weapon was owned by another individual. The Government would infer that because Moore lied to federal agents while acting as a paid Government informant, he intended to obstruct justice by refusing to testify at Furkin's trial. The Court, however, views such

possible inference as suspect for a couple of reasons.

First, although Moore lied initially to the federal agents, after being granted immunity he admitted his lie and told the truth from that point forward.[7] By telling the truth Moore essentially wiped the slate clean. Thus, such conduct—which occurred in 1993—has no relevance as to whether Moore intended to obstruct justice by refusing to testify at Furkin's trial in 1995.

Second, and more importantly, the Government apparently ignores the reason Moore lied to the federal agents in 1993. All of the evidence indicates that the lie originated with Furkin[8] and that Moore participated in the lie as a result of his fear of Furkin. No evidence was offered to the contrary.[9]

In summary, there is no evidence that Moore acted at anytime with an intent to obstruct justice. He may have breached his informant agreement with the Government by lying to the federal agents, but he breached that agreement out of fear and not out of a desire to obstruct justice. Indeed, all of the evidence indicates clearly that Moore refused to testify at Furkin's trial—and lied initially to the federal agents—as a result of his extreme fear of Furkin.

The Government also argues that Moore intended to obstruct justice because he knew that his testimony was essential and important to the Government yet he still failed to testify. Once again, the Government apparently ignores the reason why Moore failed to testify—fear of Furkin. The fact that Moore knew that his testimony was important does not imply or suggest that he acted with an intent to obstruct justice. Based on the facts of the instant case, such argument is without merit.[10]

7. Perhaps the Government could have prosecuted Moore as a result of his lie. The Government, however, chose not to pursue that path and instead granted Moore immunity.

8. Furkin drafted an affidavit supporting Moore's original story surrounding the placement of the firearm in Furkin's office closet and directed Moore to sign the affidavit.

9. Indeed, based on the position the Government took in the proceedings related to the prosecu-

tion of Furkin, such an argument would be in direct contrast to the Government's prior position which emphasized the degree to which Furkin intimidated and threatened others to act in accordance with his wishes.

10. The Court notes that even without Moore's testimony Furkin was convicted of the crime charged. Thus, was Moore's testimony as critical as the Government argues? *See Underwood*, 880 F.2d at 619 ("We also note that Underwood's refusal to testify did not affect the out-

### III. Conclusion

The Court finds that Moore refused to testify at Furkin's trial as a result of his fear of Furkin and not because he intended to obstruct justice.

Accordingly, the most analogous offense guideline is found at § 2J1.5—Failure to Appear by Material Witness.[11]

So Ordered.

come of ... [the] trial; both defendants were convicted."); *Herre,* 731 F.Supp. at 1053 ("Nor is there any evidence that the Defendant actually obstructed justice.").

11. The Government argued that there was no analogous guideline and asked the Court to sentence Moore pursuant to 18 U.S.C. § 3553(b).

*See* footnote 5. The Court agrees, however, with the other courts to consider this issue and concludes that § 2J1.5 is the most analogous guideline. Based on the facts of the instant case, we see no reason to depart from the lead set by those courts and conclude otherwise.