**THE SENATE SELECT INVESTIGATION COMMITTEE,**
**Petitioner,**

**v.**

**TUITELEAPAGA PESE IOANE FUE, MIKA KELEMETE,**
**and FITI SUNIA, Respondents.**

High Court of American Samoa
Trial Division

CA No. 25-04

May 24, 2004

Before RICHMOND, Associate Justice, SAGAPOLUTELE, Associate Judge, and TAPOPO, Associate Judge.

Counsel: For Petitioner, Tauivi Tuinei and Robert K. Maez
 For Respondents, Marc S. Roy, Assistant Attorney General

## OPINION AND ORDER

Petitioner Senate Select Investigation Committee ("SSIC") requests this Court to cite and punish each respondent for contempt of the Senate. Petitioner also seeks an order for two respondents, Commissioner Tuiteleapaga Pese Ioane Fue of the Department of Public Safety ("Commissioner") and Warden Mika Kelemete of the Tafuna Correctional Facility ("Warden"), to appear before the SSIC and answer questions of the SSIC. Further, the SSIC requests us to direct respondent American Samoa Attorney General Fiti Sunia ("Attorney General") not to interfere with SSIC proceedings and not to advise potential witnesses to disregard SSIC subpoenas. For the reasons below, we deny the petition.

## Findings of Fact

American Samoa Senate Resolution 28-12 established the SSIC as a legislative investigating committee on July 17, 2003. (Pet'r Application for Citation of Contempt and Compl. (Pet.) Ex. A.) Serving subpoenas on January 30, 2004, the SSIC directed the Commissioner and Warden to appear before the committee. The heading of the subpoenas notified the recipients of the scope of the SSIC investigation, namely to investigate "[abuse and misuse of government funds and the waste and abuse of government resources within the department of public safety]." (Pet. Ex. C, D.) A radio news bulletin, not in evidence, allegedly reported that the SSIC chairman stated that the SSIC issued the subpoenas to investigate a killing at the Tafuna Correctional Facility. *Morning News* (KHJ radio broadcast, Jan. 30, 2004). On February 5, 2004, after the Commissioner and Warden failed to comply with the subpoenas, the SSIC agreed to apply to the whole Senate for a citation of contempt against the Commissioner and Warden.

The SSIC introduced and the Senate passed American Samoa Senate Resolution 28-22 to initiate contempt proceedings against the Commissioner and Warden in the Senate Committee of the Whole on February 9, 2004. (Pet. Ex. E.) Two days later, the Commissioner and Warden appeared before the Senate Committee of the Whole represented by the Attorney General. After a reading of the application for a contempt citation, the Attorney General objected to the hearing and the committee agreed to a continuance.

Prior to the hearing, the Attorney General had advised the Development Bank of American Samoa, the Director of Human Resources, the Airport Manager, and the Retirement Fund Board and Director not to respond to SSIC subpoenas. On February 12, 2004, the Chairman of the SSIC sent a letter to the Attorney General giving notification that the SSIC considered his advice to the Development Bank of American Samoa concerning SSIC subpoenas to be contemptuous.

The Senate's Committee of the Whole agreed to recall the Commissioner and Warden to show cause why they should not be found in contempt of the Senate for failure to appear before the SSIC. The Chairman of the Senate Committee of the Whole sent a letter to notify the Commissioner and Warden of the hearing. In response, the Attorney General informed the committee Chairman that the Commissioner and Warden would not appear.

As scheduled, the Senate Committee of the Whole convened on March 9, 2004, to conduct the show cause hearing. The Commissioner and Warden failed to appear. The committee learned of the Attorney General's response for the Commissioner and Warden and took notice of the Attorney General's advice concerning other SSIC subpoenas. With a unanimous vote, the committee agreed to forward to the whole Senate a contempt citation application against the Attorney General.

The Senate recessed on March 12, 2004, without deciding whether to approve the contempt citation against the Attorney General. As an interim committee, the SSIC submitted this application to the High Court pursuant to A.S.C.A. § 2.1016(b) and the SSIC committee rules.

### Discussion

## I. Judicial Determination of Contempt of Legislature

Similar to the role of federal courts in deciding statutory contempt of Congress, we are making a determination for the Legislature whether persons acted in contempt of its investigating committee.[1] *See* 2 U.S.C.

---

[1] A.S.C.A. § 2.1016 provides that contempt of an investigating committee

§ 192 (1997). Courts have held that judicial determinations under the federal contempt statute, carrying criminal penalties, have certain safeguards required of criminal proceedings. *Quinn v. United States*, 349 U.S. 155, 165 (1955). Likewise ensuring that respondents receive sufficient due process before being punished criminally pursuant to A.S.C.A. § 2.1018(a), we construe petitions from the Legislature for contempt, evolving out of legislative committee activities such as in the case before us, "to show cause why the respondent should not be ordered to testify before the committee and to suffer civil penalties, including possible future contempt citations, in the event he were to refuse." *Senate Select Investigative Comm. v. Horning*, 3 A.S.R.2d 14, 17 (Trial Div. 1986).

■ American Samoa law identifies the specific acts which constitute contempt of investigating committees. Under A.S.C.A. § 2.1016, a person commits contempt of an investigating committee by: (1) failing to comply with a subpoena or by refusing to testify; (2) refusing to answer any relevant question or to furnish relevant subpoenaed documents; (3) committing "any other act or offence against an investigating committee" that would constitute contempt against the Legislature or either House. Section 2.0105 defines the acts constituting contempt against the Legislature as: (1) arresting or procuring the arrest of a member or officer of the Legislature; (2) committing disorderly conduct in the immediate view of the Legislature that interrupts proceedings; (3) refusing to be examined as a witness in a legislative proceeding; or (4) giving or offering a bribe to a legislator or attempting to influence a legislator's vote. Defining contempt to include acts involving either the Senate or the House, the language of § 2.0105 broadly defines contempt of the Legislature, either House, or a legislative committee. *See* A.S.C.A. §§ 2.0105(a)(1)-(4). By specifically listing the acts and offenses which constitute contempt of legislative bodies, these two statutory provisions preclude the court from relying on other grounds to grant legislative contempt petitions. *See Vessel Fijian Swift v. High Court of American Samoa*, 4 A.S.R. 983, 993 (App. Div. 1975) (holding that "it is a general principle of statutory interpretation that the mention of one thing implies the exclusion of another").

## II. SSIC's Authority to Subpeona the Comissioner and Warden

■ To exercise subpoena power, a committee requires the authorization of the Legislature or either House to conduct investigations. *See* A.S.C.A. § 2.1003; *Barenblatt v. United States*, 360

---

"shall be considered as though the alleged contempt had been committed in or against the entire House or Houses of the Legislature." Here, as prayed for by the SSIC, we consider the alleged contempt as committed against the Senate.

U.S. 109, 116-123 (1959). All subpoenas issued by committees must be for inquiries within the scope of authorized investigations. *Id.* In American Samoa, if a committee fails to adopt procedural rules, a subpoenaed witness can refuse the committee's subpoena. A.S.C.A. §§ 2.1004, 2.1018; *Horning*, 3 A.S.R.2d at 20.

The SSIC issued legitimate subpoenas to the Commissioner and Warden. Pursuant to American Samoa Senate Resolution 28-12 and A.S.C.A. § 2.1003, the SSIC has investigatory power to issue subpoenas. Properly granted by the Senate, SSIC investigative authority is not impaired by overlap with the authority of other committees.

The SSIC inquiry that prompted the two subpoenas was within the scope of the SSIC's authority. The SSIC has the authority to "[review government operations and its financial condition and to investigate illegal and corrupt policies, procedures and practices and activities within all departments and agencies of the American Samoan Government]." (Pet. Ex. A at 2.) The two subpoenas related to an inquiry into whether the Department of Public Safety's administration of, or policies and procedures for, the Territorial Correctional Facility constituted waste and abuse of government resources or funds. (Pet. A Ex. C, D.) Occurring under the Commissioner's and Warden's supervision, even a more narrow inquiry into a killing at the Territorial Correctional Facility sufficiently touches on potentially illegal and corrupt government operations to fall within SSIC authority.

 Contending that the procedural rules adopted by the SSIC copy almost verbatim the statutory procedures binding on committees, the Commissioner and Warden argue that the SSIC adopted insufficient procedural rules, rendering the SSIC subpoenas invalid. (Pet. Ex. B.) *See Horning*, 3 A.S.R.2d at 19-20. Finding the SSIC procedural rules sufficient, we disagree. In *Horning*, the Senate adopted procedural rules for a committee by reference, resolving that "the Senate adopts the procedural provisions of Title 2, Chapter 10 as [the committee's] rules governing the conduct of its hearings." S. Res. 51, 19 Leg., 3rd Sess. (Am. Samoa 1986); *Horning*, 3 A.S.R.2d at 19. The court held these rules inadequate because A.S.C.A. § 2.1004 requires committees to adopt procedural rules beyond statutorily imposed procedure. *Horning*, 3 A.S.R.2d at 19-20. Here, the rules comply with the statute by having at least one procedural provision beyond statutorily imposed procedure. The SSIC adopted a full text of procedural rules that provided for six members, one member more than the five member minimum required by A.S.C.A. § 2.1006. (Pet. Ex. B at 1.) Finding the rules minimally compliant with A.S.C.A. § 2.1004, we will not require the SSIC to adopt additional procedural rules, because "the Court can neither dictate to the committee the substance of the rules it may adopt nor hypothesize which rules it may have adopted." *Horning*, 3 A.S.R.2d at 19.

## III. Commisioner and Warden

 The SSIC requests a contempt citation against the Commissioner and the Warden for failure to comply with the SSIC February 5, 2004 subpoena.[2] It is undisputed that the Commissioner and Warden failed to appear before the SSIC. Finding that the Commissioner and Warden did not act deliberately, we decline to cite them with contempt.

 Depending on the circumstances, we may accept or reject an excuse for absence or tardiness in appearing for a proceeding. *See* 17 AM. JUR. 2D *Contempt* § 91 (1990). When we find that a person was reasonably unaware or believed in good faith that he had no obligation to appear, we will not find the person in contempt. *See id.*

 A misunderstanding about the cancellation of the February 5, 2004 hearing led to the absences. We find the testimony credible that the Commissioner and Warden considered the hearing cancelled and mistakenly missed it. Nafanua Lealofi, the Commissioner's secretary, testified that she received a call from the Governor's office to notify the Commissioner of the hearing's cancellation. As a representative of the Governor, the caller was sufficiently reliable for the Commissioner to consider the hearing cancelled. Mika Kelemete, who works for the Warden, testified that the Commissioner called to inform the Warden that the hearing was cancelled. Providing more evidence of a mistake, the Commissioner testified that after the hearing he contacted the SSIC chairman to explain the miscommunication. Reasonably mistaken that the hearing was cancelled, the Commissioner and Warden did not deliberately flaunt the SSIC subpoena. We do not find either government official in contempt of the Legislature.

## IV. Attorney General

 As part of the executive branch, the Attorney General represents the interests of the American Samoa Government in litigation. Under A.S.C.A. § 46.1220, the "Attorney General shall prosecute all criminal cases." Lacking a complete set of position-defining statutes, the Attorney General performs additional functions under executive guidance similar to those defined for the United States Attorney General under federal law. *See* 28 U.S.C. §§ 501-530D (2004). The Attorney General defends government agencies in litigation, and advises heads of executive departments and agencies on questions of law concerning department administration. *See id.* at §§ 512, 514, 516.

---

[2] The petition does not request a contempt citation for the failure of the Commissioner and Warden to appear before the Senate Committee of the Whole on March 9, 2004.

 In support of its legislative function, the Legislature has broad authority to investigate. *See Quinn*, 349 U.S. at 160-161; *McGrain v. Daugherty*, 273 U.S. 135, 179-180 (1927). A criminal investigation or on-going criminal proceeding does not divest the Legislature of power to inquire into a particular matter. *McGrain*, 273 U.S. at 179-180; *Hutchenson v. U.S.*, 369 U.S. 599, 613 (1962). After a fruitful investigation, a committee may forward its findings to the Attorney General, who has the discretion to investigate further or initiate prosecution.

 Despite sharing a common interest in eliminating crime, the Legislature and the Attorney General occasionally find themselves in adverse positions because of legislative investigations into illegal or corrupt government activity. As in this case, the Attorney General may provide advice to government witnesses who receive subpoenas from legislative investigating committees. The interests of the Legislature and Attorney General may also be adverse when the Legislature investigates the Attorney General. For example, the Legislature can investigate the "nonfeasance and misfeasance" of the Attorney General. *See McGrain*, 273 U.S. at 151, 179-180 (holding that a Congressional committee can investigate the failure United States Attorney General to prosecute); H.R. REP. NO. 105-728, at 20-25 (1998) (discussing a Congressional investigation into United States Attorney General's failure to appoint an independent counsel). At the federal level, Congress and the United States Attorney General often resolve conflicts through negotiation. When Congress must resort to exercising its contempt power, it usually does so to compel appearance or the production of documents. *Id.*, at 1-2 (1998) (citing United States Attorney General Janet Reno with contempt for failure to produce papers relevant to why she did not appoint an independent counsel). In extreme cases, American Samoa law provides for the appointment of an independent prosecutor when a legislative investigation discovers potentially criminal behavior of the Attorney General that warrants further investigation or prosecution. *See* A.S.C.A. §§ 4.0801-4.0817.

The SSIC petitions us to cite the Attorney General with contempt for advising witnesses not to comply with subpoenas. The SSIC contends that the Attorney General's advice constitutes: (1) interference with the Senate Committee of the Whole's hearing scheduled on March 9, 2004, by directing witnesses not appear as ordered;[3] (2) interference with the subpoena powers of the SSIC by advising witnesses not to comply with the SSIC's subpoenas; (3) interference with the legislative process in the

---

[3] It is debatable whether the SSIC has standing to bring a petition for contempt for acts done in alleged contempt of the Senate Committee of the Whole. Deciding this case on other grounds, we decline to rule on the issue here.

administration of justice by attempting to discredit the SSIC; (4) tampering with witnesses before the Senate Committee of the Whole and the SSIC; (5) obstruction of the legislative process by purposely obstructing, impairing, and hindering the Senate Committee of the Whole and the SSIC; and (6) obstruction of justice.[4]

■■ However, we deny the petition to cite the Attorney General because none of the grounds for contempt in the petition constitute contempt of the Senate or the SSIC as defined by the American Samoa Code. The Attorney General has not refused to comply with a subpoena or refused to answer. A.S.C.A. §§ 2.1016(1), 2.1016(2). We cannot cite the Attorney General under A.S.C.A. § 2.1016(3), because he did not commit an act or offense that amounts to contempt under A.S.C.A. § 2.0105. The Attorney General has not arrested anyone within the meaning of the statute, committed disorderly conduct, refused examination, or bribed or influenced a legislator. *See* A.S.C.A. § 2.0105; BLACK'S LAW DICTIONARY 422 (5th ed. 1979) (defining disorderly conduct).

■■ While not contemptuous on the grounds argued in this petition, the Attorney General's interference with legislative investigations raises concerns. Besides initiating contempt proceedings against the Attorney General, the Legislature has other legal tools that may be available to protect its investigations. Regardless of attorney advice, the Legislature can cite a non-compliant subpoenaed person for contempt. *See United States v. Remini*, 967 F.2d 754, 757 (2d Cir. 1992) (holding that advice of attorney is not a defense against contempt). At hearings, a legislative committee can enforce a statutory provision that a "counsel's role is limited to advising the witness as to his rights." A.S.C.A. § 2.1011. The Legislature can expand the definition of contempt of Legislature under the law. *See, e.g.*, Alaska Stat. § 09.50.010 (2003). In addition, the Legislature can initiate the process of having the Attorney General cited for an ethical violation or investigated by an independent prosecutor for offenses against the administration of justice. *See* MODEL RULES OF PROF'L CONDUCT R. 3.5 (2002); A.S.C.A. §§ 46.4601-46.4638.

### Conclusion and Order

We deny the petition to cite the Commissioner and Warden for contempt. As they did not deliberately fail to comply with the subpoena, we do not direct them to appear before the SSIC. Should the Commissioner and Warden fail to comply with another properly issued subpoena, the SSIC may proceed with further contempt proceedings.

---

[4] Concentrating only on the disruption caused by the Attorney General's advice, the petition does not request a contempt citation for other potentially contemptuous acts of the Attorney General.

162

We deny the petition to cite the Attorney General in contempt of Legislature, because the Attorney General did not commit any punishable contemptuous acts.

It is so ordered.