# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-00844-SCT

*BENARDRICK C. McKINNEY*

*v.*

*KASEY HAMP*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2016 |
| TRIAL JUDGE: | HON. WATOSA MARSHALL SANDERS |
| TRIAL COURT ATTORNEYS: | STEPHANIE NICOLE MORRIS |
| | TONYA YEVETTE POWELL |
| | DALANEY LEE MECHAM |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | TONYA YEVETTE POWELL |
| ATTORNEYS FOR APPELLEE: | STEPHANIE NICOLE MORRIS |
| | ERICA JEAN WILSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 02/08/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2016-CA-01299-SCT

*BENARDRICK CORNELIUS McKINNEY*

*v.*

*KASEY HAMP*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/27/2016 |
| TRIAL JUDGE: | HON. WATOSA MARSHALL SANDERS |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | TONYA YEVETTE POWELL |

ATTORNEY FOR APPELLEE:      STEPHANIE NICOLE MORRIS
NATURE OF THE CASE:      DOMESTIC RELATIONS
DISPOSITION:      AFFIRMED IN PART; REVERSED AND
RENDERED IN PART; REVERSED AND
REMANDED IN PART - 02/08/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE RANDOLPH, P.J., COLEMAN AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. In these consolidated appeals, we find the chancellor properly included a professional athlete's signing bonus as part of his gross income when crafting a child-support award. We also hold that a chancellor's order for prospective monthly child-support payments cannot be stayed by a clerk-approved supersedeas bond under Mississippi Rule of Appellate Procedure 8(a).

¶2. But until today, this Court had not addressed Rule 8(a)'s effect on prospective child-support payments. So it was reasonable for the father to have relied on his attorney's advice that the award was stayed. Thus, he should not have been held in contempt for nonpayment of the increased support award.

¶3. We affirm in part, reverse and remand in part, and reverse and render in part.

**Background Facts and Procedural History**

**I.    Paternity and Child Support**

¶4. Benardrick McKinney and Kasey Hamp's son, K.M., was born out of wedlock while

McKinney attended and played football for Mississippi State University.[1] In his junior year, McKinney was selected in the second round of the National Football League (NFL) draft and signed a contract to play professional football for the Houston Texans.

¶5.     Before McKinney signed his NFL contract, Hamp sought assistance to pay for K.M.'s support and expenses.  The Mississippi Department of Human Services (DHS) became involved in her child-support request.  And on October 15, 2014, DHS filed a complaint in Tunica County against McKinney to determine paternity and child support.  On March 16, 2015, a paternity test showed a 99.99% probability that McKinney was K.M.'s father.  The paternity test results led DHS to return to chancery court.  And on June 15, 2015, the chancellor entered a temporary order awarding Hamp $150 per month in child support. McKinney voluntarily increased his support obligation to $750 per month.

¶6.     The next day, Hamp, individually, filed a complaint for child support in Tunica County. She pointed out that McKinney's income had increased substantially since DHS had filed its complaint.  McKinney had signed a four-year, several-million-dollar NFL contract, which included a substantial signing bonus.

¶7.     McKinney answered the complaint and raised a counterclaim seeking custody of K.M. In his answer, McKinney argued that because DHS had already obtained a child-support award in another suit, Hamp failed to both state a claim and join a necessary party—DHS. Hamp petitioned to amend her complaint to name DHS as a party, but the chancellor denied her request.  On July 30, 2015, the chancellor dismissed Hamp's complaint without

---

[1] K.M. was born on September 3, 2013.

prejudice. Hamp then filed a petition for modification of child support in the DHS lawsuit on September 14, 2015.

¶8. On February 25, 2016, Hamp and McKinney again appeared before the chancellor on the custody counterclaim. Both agreed they had resolved custody and visitation issues. And though the DHS lawsuit was still pending, the parties asked to proceed on the child-support issue. The DHS attorney was agreeable to moving forward on the support matter.

¶9. When the hearing concluded, the chancellor asked the parties, including DHS, to provide briefs addressing whether McKinney's signing bonus should be considered gross income. But before submitting a brief, McKinney filed a motion to recuse the chancellor. He took issue with the chancellor's comments and expressions from the bench—particularly her asking Hamp whether her father was K.C. Hamp, the Tunica County sheriff. The chancellor denied McKinney's motion. She insisted she did not know the sheriff personally. She also maintained, as she had at trial, that she would follow the statutory and caselaw requirements when setting child support.

¶10. In DHS's supplemental chancery court brief, DHS argued McKinney's signing bonus should be considered gross income. McKinney disagreed and argued it should not. From the record, it does not appear Hamp filed a brief.

¶11. On April 21, 2016, the chancellor consolidated McKinney's custody counterclaim and the DHS child-support suit. Four days later, the chancellor entered an agreed order determining custody and visitation. But the child-support issue remained unresolved.

¶12. On April 27, 2016, the chancellor entered her findings and order on the child-support

4

claim. She addressed three main issues: (1) whether to include McKinney's signing bonus as regular income; (2) the amount of monthly child support; and (3) who should claim K.M. as a dependent for taxes.

¶13. Using McKinney's Uniform Chancery Court Rule 8.05 disclosure and other financial records, the chancellor found there had been a material change in circumstances. She found McKinney's signing a NFL contract required the temporary DHS order to be modified upward. Citing primarily Mississippi Code Section 43-19-101(3)(a), the chancellor determined McKinney's signing bonus should factor into the child-support award. But she decided it should be calculated independently from his nonbonus income and would be retroactive. She then took McKinney's signing bonus—after taxes and deductions—and divided it over five years. She ordered monthly child-support payments of $407.61 for four years and a one-year "retroactive" payment of $4,483.71.

¶14. The chancellor then turned to McKinney's nonbonus income and determined his annual adjusted gross income after taxes and deductions.[2] She also found that, because Hamp was in school and K.M. should benefit from McKinney's increased financial status, the statutory fourteen-percent child-support rate for noncustodial parent income applied. The chancellor ultimately ordered monthly child-support payments of $2,410.37 and a retroactive payment of $18,264.07. The chancellor also ordered that McKinney and Hamp alternate claiming K.M. as a dependent for tax purposes each year. McKinney disagreed with each child-support award and appealed.

---

[2] The chancellor looked specifically at McKinney's salary projections for the 2015-16 NFL regular season.

## II. Contempt and Supersedeas Bond

¶15. On June 30, 2016—before McKinney had secured a supersedeas bond for appeal—Hamp filed a motion for contempt and attorney's fees. She claimed McKinney had failed to make any payments required by the chancellor's child-support order. McKinney ultimately secured a supersedeas bond, which was approved by the Tunica County chancery clerk on July 14, 2016. The next day he responded to Hamp's motion. He pointed to the supersedeas bond and asked the court to dismiss the contempt issue.

¶16. The chancellor heard arguments on Hamp's motion. In a July 27, 2016 order, she found McKinney's supersedeas bond was ineffective to stay enforcement of the child-support order. Citing Mississippi Rule of Appellate Procedure 8(a), the chancellor held the monthly and retroactive child-support payments were "not a money judgment or a judgment solely for payment of money." And even if Rule 8(a) applied to the child-support order, McKinney's bond did not meet the rule's 125-percent requirement. Though McKinney's bond was for $28,434.73, she found the child-support payments continually accrued until the contempt motion was heard. So, as she saw it, the bond should have been at least $36,184.65. For these reasons, she found his bond was ineffective—despite that the bond had already been approved and the chancery clerk had issued a stay on enforcement.

¶17. After the April 25, 2016 child-support order was entered, McKinney continued paying Hamp $750 per month—the amount he had been paying since the temporary DHS order in June 2015. While the chancellor credited McKinney for these payments, she ruled the remaining delinquent amount must be paid immediately. She then, in turn, awarded Hamp

6

attorney's fees. To determine a reasonable amount, she required Hamp to provide an itemized statement and affidavits. Hamp submitted those items on August 8, 2016. McKinney filed a memorandum response, with his own affidavits, contesting an attorney's-fees award. On August 22, 2016, the chancellor awarded Hamp $3,316.41 in attorney's fees and required McKinney to pay within ten days. Again, McKinney timely appealed.

¶18. In the consolidated appeals before this Court, McKinney raises nine issues: (1) his signing bonus was wrongly considered gross income; (2) his mandatory retirement contributions were not deducted from gross income; (3) the retroactive support payments were based on incorrect income; (4) there were no written findings on whether the statutory child-support guidelines should apply; (5) only he should claim K.M. as a dependent for taxes; (6) Hamp's Rule 8.05 disclosure was submitted ex parte; (7) the trial court lacked jurisdiction to hear the contempt motion; (8) his conduct was not willful, deliberate, or contumacious; and (9) the attorney's fees award was excessive and unsupported by evidence.

## Discussion

¶19. In matters of divorce, alimony, and child support, this Court will not disturb a chancellor's ruling unless it was manifestly wrong or an erroneous legal standard was applied. *Lahmann v. Hallmon*, 722 So. 2d 614, 618 (Miss. 1998). Questions of law are reviewed de novo. *Lewis v. Pagel*, 172 So. 3d 162, 172 (Miss. 2015).

### I. Signing Bonus

¶20. Neither party disputes that McKinney received a substantial signing bonus when he signed with the Houston Texans. But they disagree over whether it qualifies as gross income

for child-support purposes.  While Hamp argues for its inclusion, McKinney maintains the

signing bonus was a one-time payment—not a recurring bonus.[3]

¶21.    Mississippi Code Section 43-19-101(3) provides the formula for calculating adjusted

gross income for child-support awards.[4]  This statute directs that gross income must be

---

[3] McKinney received his entire signing bonus in 2015, in three installments.

[4] Section 43-19-101(3) states, in full:

The amount of "adjusted gross income" as that term is used in subsection (1) of this section shall be calculated as follows:

(a) Determine gross income from all potential sources that may reasonably be expected to be available to the absent parent including, but not limited to, the following: wages and salary income; income from self-employment; income from commissions; income from investments, including dividends, interest income and income on any trust account or property; absent parent's portion of any joint income of both parents; workers' compensation, disability, unemployment, annuity and retirement benefits, including an Individual Retirement Account (IRA); any other payments made by any person, private entity, federal or state government or any unit of local government; alimony; any income earned from an interest in or from inherited property; any other form of earned income; and gross income shall exclude any monetary benefits derived from a second household, such as income of the absent parent's current spouse;

(b) Subtract the following legally mandated deductions:

(I) Federal, state and local taxes. Contributions to the payment of taxes over and beyond the actual liability for the taxable year shall not be considered a mandatory deduction;

(ii) Social security contributions;

(iii) Retirement and disability contributions except any voluntary retirement and disability contributions;

(c) If the absent parent is subject to an existing court order for another child or children, subtract the amount of that court-ordered support;

8

calculated "from all potential sources that may ***reasonably be expected to be available*** to the absent parent." Miss. Code Ann. § 43-19-101(3)(a) (emphasis added). The chancellor found the signing bonus qualified as "any other payment[]" or "any other form of earned income." *Id.* And because McKinney had already received the bonus, the chancellor found the income was "reasonably . . . expected to be available" to McKinney. *Id.*

¶22. Indeed, the record shows McKinney received *all* of his signing bonus in 2015. And McKinney does not contest that chancellors may consider annual bonuses as part of gross income when awarding child support. *See **Alderson v. Morgan ex rel. Champion***, 739 So. 2d 465, 467-68 (Miss. Ct. App. 1999). Instead, he points out his signing bonus is not an annual performance bonus or some other potentially recurring income. And because he has entered a multiyear contract, it cannot be "reasonably expected" he will sign a new contract with the Texans or another team annually. He argues his situation is akin to ***Johnston v. Johnston***, where we found it was "unreasonable and clearly erroneous" for a chancellor to include in a child-support award a father's income from teaching a one-time training course

---

(d) If the absent parent is also the parent of another child or other children residing with him, then the court may subtract an amount that it deems appropriate to account for the needs of said child or children;

(e) Compute the total annual amount of adjusted gross income based on paragraphs (a) through (d), then divide this amount by twelve (12) to obtain the monthly amount of adjusted gross income.

Upon conclusion of the calculation of paragraphs (a) through (e), multiply the monthly amount of adjusted gross income by the appropriate percentage designated in subsection (1) to arrive at the amount of the monthly child support award.

Miss. Code Ann. § 43-19-101(3) (Rev. 2015).

when "[the father] had no contract or expectation for this additional employment to continue." ***Johnston v. Johnston***, 722 So. 2d 453, 461 (Miss. 1998). After review, we find McKinney's employment situation and signing bonus are far different from the general uncertainty of a parent's supplemental income. Nor does his bonus bear much resemblance to money obtained from a parent's unexpected corporate buyout. *See **Robertson v. Robertson***, 812 So. 2d 998, 1002 (Miss. Ct. App. 2001) (father's buyout was not "reasonably expected" and "it was certainly not a yearly event" like a bonus). There is really no legitimate comparison between these scenarios and McKinney's.

¶23. McKinney is an NFL linebacker, not a moonlighting parent. And, according to the record, his signing bonus accounts for a major guaranteed portion of his income as a professional athlete. Under Section 43-19-101(3), gross income for child support must be calculated from "all potential sources that may reasonably be expected to be available to the absent parent . . . ." Because the bonus has already been received, it was certainly "reasonably expected to be available"—as contemplated by Mississippi law. So we cannot find the chancellor was wrong to deem it "gross income" for child-support purposes.

¶24. However, it appears the chancellor was incorrect about the duration of McKinney's NFL contract. The bulk of the record supports that McKinney's NFL contract was for four years, not five. So we reverse and remand for the chancellor to recalculate the child-support order to reflect McKinney's contract as a four-year contract.

## II. Retirement Contributions

¶25. McKinney next argues the chancellor did not deduct his mandatory retirement

10

contributions from his gross income. Even Hamp admits the chancellor "did not specifically state" that she had considered McKinney's retirement contributions.[5]

¶26.　Under Section 43-19-101(3)(b), "[r]etirement and disability contributions except any voluntary retirement and disability contributions" should be deducted from gross income. McKinney's financial statements from the Houston Texans show monthly retirement contributions, which he claims are mandatory. But the chancellor made no findings about these contributions. Because mandatory retirement contributions should be deducted from gross income, this Court reverses and remands for findings on whether the contributions are mandatory. If the contributions are indeed mandatory, they should be deducted from McKinney's gross income.

### III.　Retroactive Child Support

¶27.　Citing a substantial and material change in circumstances—resulting from McKinney's professional football contract—the chancellor awarded a retroactive increase in child-support payments. The award was ordered retroactive to June 16, 2015. McKinney argues this was error.

¶28.　Parties may seek a child-support modification when there are substantial and material changes in circumstances. *See generally **Evans v. Evans***, 994 So. 2d 765, 770 (Miss. 2008). And McKinney does not contest the substantial and material salary changes mentioned. His disagreement instead mainly focuses on the date of the retroactive award.

---

[5] Hamp argues on appeal that McKinney received state income tax deductions he should not have received. She claims Texas does not assess income taxes. But this issue was never presented to the chancellor, so we do not address it. *See **Adams v. Bd. of Supervisors of Union Cty.***, 177 Miss. 403, 170 So. 684, 685 (1936).

¶29.    This Court has looked to our statutory law and has held that "'[a]n upward retroactive modification *may* be ordered back to the date of the event justifying the upward modification.'" ***A.M.L. v. J.W.L.***, 98 So. 3d 1001, 1018 (Miss. 2012) (citing Miss. Code Ann. § 43-19-34(4) (Rev. 2009)) (emphasis in original).  Section 43-19-34(4) still provides the same today.  *See* Miss. Code Ann. § 43-19-34(4) (Rev. 2015).  But we have also suggested that "the better rule is to allow modification amounting to an increase in support as of the date of the petition to modify or thereafter, within the sound discretion of the trial court." ***Lawrence v. Lawrence***, 574 So. 2d 1376, 1384 (Miss. 1991).  This is a discretionary call.

¶30.    After review, we see no error in the chancellor awarding a retroactive increase.  Nor did she abuse her discretion in choosing June 16, 2015—the date Hamp initially filed her separate petition for child support—to implement the retroactive increase.

IV.    **Statutory Guidelines**

¶31.    When the noncustodial parent's income exceeds $100,000, the chancellor must make a written finding on whether Section 43-19-101's support guidelines apply. *See* Miss. Code Ann. § 43-19-101(4) (Rev. 2015).  There is a rebuttable presumption these guidelines are appropriate. *Id.*  To overcome this presumption and *deviate* from these guidelines, a chancellor must make specific findings under the criteria in Section 43-19-103. But here, the chancellor did not deviate from the guidelines. So McKinney is wrong in his contention that the chancellor was required to make specific findings on each factor in Section 43-19-103. All that was required was for the chancellor to find, in writing, that the standard, statutory,

fourteen-percent guideline should apply. And she did.

¶32. Furthermore, the chancellor's overall written analysis supports her decision. Contrary to McKinney's insistence, it is supported by evidence. The chancellor considered both Hamp's and McKinney's ages, health, incomes, and living expenses. She also considered K.M.'s age, expenses, and future needs related to his and Hamp's move to Memphis for Hamp to attend nursing school. Hamp was not particularly thorough on the cost for K.M.'s daycare or potential apartments in Memphis—the only two specific expenses McKinney takes issue with on appeal. But there is nothing that seriously undercut her testimony about these costs. After review, we see no error in the handling of either of these issues.

### V. Tax Exemption

¶33. Based on the child-support award and his overall financial situation, McKinney claims the chancellor erred by alternating who could claim K.M. as a dependent on their taxes. He says the chancellor failed to consider the factors laid out in *Louk* when considering the tax issue. *See Louk v. Louk*, 761 So. 2d 878, 883-84 (Miss. 2000). But in truth, this Court has not established a specific test for allocating child tax exemptions, though we have discussed some suggested considerations. *Id.* Still, though there is no definitive test, the chancellor was confronted with McKinney's substantial income and should have performed some analysis about the exemption, but did not. Thus, we find the chancellor's handling of this issue lacking. The record shows Hamp has no apparent significant independent income from which she would enjoy any advantage in having the dependent child exemptions. But McKinney clearly does. In short, all we have before us is the chancellor's conclusion that

13

the exemption should be alternated. On remand, the chancellor should revisit this issue and, at a minimum, make findings detailing her reasoning for allocating the dependent tax exemption.

## VI. Ex Parte 8.05 Disclosure

¶34. McKinney argues that Hamp's Rule 8.05 disclosure was submitted to the chancellor ex parte and it was never made part of the record.[6] We note that neither party's Rule 8.05 disclosure was part of the record until McKinney filed his on May 11, 2016—approximately two weeks after the chancellor's April 25, 2016 child-support opinion and order. Yet the chancellor still references McKinney's and Hamp's 8.05 disclosures in that opinion. This issue could have been—but was not—raised below. So we will not consider the argument on appeal. *See Adams v. Bd. of Supervisors of Union Cty.*, 177 Miss. 403, 170 So. 684, 685 (1936).

## VII. Jurisdiction for Contempt Motion

¶35. McKinney failed to abide by the chancellor's April 25, 2016 order, requiring him to pay monthly and retroactive child support. His nonpayment prompted Hamp to file a motion for contempt and attorney's fees on June 30, 2016. McKinney secured a supersedeas bond for $28,434.73, which the Tunica County chancery clerk approved and filed on July 14,

---

[6] The transcript also shows an exchange between the chancellor and the attorneys, discussing each party's 8.05 disclosure at the end of trial. Hamp's attorney clearly stated that she had Hamp's 8.05 with her, and the chancellor responded that she would need it that day. McKinney's attorney was present and participated during that entire exchange.

2016.[7]

¶36.	A week later, the chancellor heard Hamp's motion. She determined that child-support payments were "not a money judgment or a judgment solely for payment of money" under Mississippi Rule of Appellate Procedure 8(a). Alternatively, the chancellor found that, even if a supersedeas bond was effective to stay execution, McKinney's bond did not meet the required 125-percent amount of $36,189.65.

¶37.	This Court has held that "[t]he amount of a supersedeas bond should be sufficient to protect the appellee in his judgment; therefore, it should insure the payment of the judgment and interest, and any waste that could occur pending the appeal." *In re Estate of Taylor*, 539 So. 2d 1029, 1031 (Miss. 1989). And when a supersedeas bond for appeal is approved, execution on the underlying judgment or decree is suspended. *Lindsey v. Lindsey*, 219 Miss. 720, 723, 69 So. 2d 844, 844-45 (1954).

¶38.	In a judicial-performance case, this Court has made very clear that a supersedeas bond stays execution of a child-support-modification order. *Miss. Comm'n on Judicial Performance v. Littlejohn*, 172 So. 3d 1157, 1160 (Miss. 2015). Indeed, this Court found a chancellor abused his power and committed misconduct by holding a parent in contempt for not paying a support order he had appealed with a supersedeas bond. *Id*. That chancellor was suspended without pay for disregarding "the clear wording" of Rule 8(a) and this Court's application of it in *Lindsey*. *Littlejohn*, 172 So. 3d at 1160, 1163.

---

[7] The $28,434.73 sum is 125 percent of the retroactive child-support award. But it does not include the three monthly child-support payments between the April 25, 2016 order and July 14, 2016.

¶39. There is, however, a significant distinction between *Littlejohn* and this case. That distinction is the difference in the type of child-support payments appealed. In *Littlejohn*, a child-support order was modified and the father was required to pay $15,000 for an automobile for his child and $1,750 in attorney's fees—together, a *definitive* money judgment. And rather than pay this sum, the father secured a supersedeas bond under Rule 8(a). But here, we are dealing with prospective, monthly, child-support obligations, not a definitive money judgment. And this Court has never squarely addressed whether *prospective, monthly, child-support obligations* can be stayed by a supersedeas bond under Rule 8(a).

¶40. This Court has, however, recognized the need for continued, monthly, child-support payments to provide support for the child during the pendency of an appeal. *Petersen v. Petersen*, 238 Miss. 190, 118 So. 2d 300, 304 (1960). In *Petersen*, the chancellor entered a decree awarding monthly, child-support payments but stated that such payments "should remain in effect pending the appeal with supersedeas . . . ." *Petersen*, 238 Miss. at 198-99, 118 So. 2d at 304. And this Court held the chancellor was clearly justified in requiring continued, monthly, child-support payments pending an appeal with supersedeas. *Id*. But until today, this Court has not addressed whether prospective, monthly child-support payments can be stayed as money judgments by a Mississippi Rule of Appellate Procedure 8(a) supersedeas bond.[8]

---

[8] The Court of Appeals has previously concluded, in an unpublished opinion, that prospective, monthly-child support payments are not money judgments and therefore cannot be stayed by a Rule 8(a) supersedeas bond. *See Bland v. McCord*, 94-CA-00947-COA, 94-CA-01158-COA (Miss. Ct. App. Sep. 17, 1996).

16

¶41.    Under Mississippi law, child-support payments become fixed and vested when the payments become due and unpaid. ***Brand v. Brand***, 482 So. 2d 236, 237 (Miss. 1986). And as each payment comes dues, it becomes "a judgment" against the noncustodial parent. ***Id***. (citations omitted). Once fixed and vested, those judgments cannot be modified. *See* ***Hambrick v. Prestwood***, 382 So. 2d 474, 476 (Miss. 1980); *see also* ***Cunliffe v. Swartzfager***, 437 So. 2d 43, 45-46 (Miss. 1983). So, because child-support arrearages and other definitive, one-time, child-support payments can be reduced to money judgments, a Rule 8(a) supersedeas bond can protect an appellee. But that is not necessarily the case for prospective, monthly, child-support obligations. We find these are *not* money judgments and cannot be stayed by a Rule 8(a) supersedeas bond.

¶42.    But this does not necessarily mean McKinney could not have sought a supersedeas bond. However, to do so, he would have had to make an application to the chancellor for a stay under Mississippi Rule of Appellate Procedure 8(b).[9] And the chancellor, not the clerk,

---

[9] Mississippi Rule of Appellate Procedure 8(b) states:

(1) Application for a stay of the judgment or the order of a trial court pending appeal or for approval or disapproval of a contested supersedeas bond or for an order suspending, modifying, restoring, or granting an injunction during the pendency of an appeal must ordinarily be made in the first instance to the trial court. The court shall require the giving of security by the appellant in such form and in such sum as the court deems proper, and for good cause shown may set a supersedeas bond in an amount less than the 125 percent required in cases under Rule 8(a).

(2) However, a bond or equivalent security required on any money judgment entered in whole or in part on account of punitive damages shall, as to the punitive damages portion of the judgment only, be the lower of:

(a) 125 percent of the total amount of punitive damages, or

would have to decide whether to approve the bond, in light of an opposing party contesting the bond.

¶43. Turning to this case, we find the chancellor's order modifying the monthly child-support award could not be stayed by a Rule 8(a) supersedeas bond. Accordingly, McKinney was required either to apply for and be granted a supersedeas bond under Rule 8(b) or to

<div style="margin-left: 2em;">

(b) ten percent of the net worth of the defendant seeking appeal as determined by applying generally accepted accounting principles to the defendant's financial status as of December 31, of the year prior to the entry of the judgment for punitive damages.

(c) Absent unusual circumstances, the total amount of the required bond or equivalent security for any case as to punitive damages shall not exceed $100,000,000.

(3) To qualify for reduction of bond or equivalent security under subpart (b)(2)(b), there must be a good and sufficient showing that the imposition of a supersedeas bond of 125% of the full judgment appealed from would place that appellant in a condition of insolvency or would otherwise substantially threaten its future financial viability.

(4) When the appellant is allowed the benefit of a reduction in bond or equivalent security under subpart (b)(2)(b) or (c), the court may require submission of such reports or evidence to the court and to opposing parties as will allow them to be properly informed of the financial condition of the appellant during the period of supersedeas. If at any time after notice and hearing, the court finds that an appellant who has posted a bond or equivalent security for less than 125 percent of the full amount of the judgment has taken actions that affect the financial ability of the appellant to respond to the judgment, or has taken other actions with the intent to avoid the judgment, the court shall increase the bond or equivalent security to the full 125 percent of the judgment. If the appellant does not post the additional bond required by the court, the stay shall be revoked.

(5) If a hearing is necessary for issues arising under subpart (b), the judgment shall be stayed during such hearing and for ten days following the trial court's ruling. The ruling of the trial court on motions filed under this subpart (b) shall be reviewable by the Supreme Court or the Court of Appeals.

</div>

18

make the increased, monthly, child-support payments. But, as to the retroactive child-support award, it was a definitive, one-time payment of a monetary sum. So a Rule 8(a) supersedeas bond would adequately protect Hamp, and ultimately K.M., during the appeal.

¶44. We therefore affirm the chancellor's ruling that prospective, monthly, child-support obligations are not money judgments that can be stayed by a Rule 8(a) supersedeas bond. However, we reverse and render the chancellor's decision that a Rule 8(a) supersedeas bond could not stay execution on the retroactive child support.

### VIII. Contempt Findings

¶45. At the contempt hearing, McKinney testified that he followed his counsel's, mother's, and financial advisor's advice to secure a supersedeas bond instead of making the retroactive and monthly child-support payments. There were also difficulties securing a bond, not knowing he could post a cash bond instead. McKinney testified that at no point did he intend to disobey the chancellor's order. Despite this, the chancellor found McKinney in contempt. But rather than "order McKinney be jailed," the chancellor ordered he pay the delinquent amount immediately and Hamp's attorney's fees. McKinney says this was error.

¶46. In a contempt action for unpaid child support, failure to make required child-support payments is prima facie evidence of contempt. *Lahmann* , 722 So. 2d at 620 (citing *Guthrie v. Guthrie*, 537 So. 2d 886, 888 (Miss. 1989)). The burden then shifts to the payor to show, through clear and convincing evidence, an inability to pay or other defense to contempt. *Id*. "Whether a party is in contempt is left to the Chancellor's substantial discretion." *Id*. (citation omitted).

19

¶47. The record contains ample evidence that McKinney was advised and reasonably believed a supersedeas bond would stay the retroactive and monthly child-support payments. *See generally* **McKnight v. Jenkins**, 155 So. 3d 730, 732-33 (Miss. 2013) (holding that a party's reliance on counsel's advice to not pay bill could not be willful contempt). And while reliance on counsel's advice may not in every instance protect a party from contempt, here the court clerk approved his bond and issued a stay on enforcement. Because this Court has, until now, never specifically addressed Rule 8(a)'s effect on monthly child-support payments, we cannot say McKinney's reliance on the supersedeas bond was contemptuous or merely disobedient, as the dissent labels it.

¶48. The dissent characterizes the contempt issue as one of McKinney not paying child support and ignoring the chancellor, by just listening to his attorney and other advisors. With respect, the dissent simply misses the gist of what happened and what we now hold. The record shows McKinney was already subject to an existing support order. And he *continued to abide by that order* even after the support-modification order at issue here was entered. So K.M. continued to receive child support. Rather, what McKinney sought, and what he was granted, was a Rule 8(a) supersedeas bond. He believed—and this Court has, until now, never expressly said otherwise—that the supersedeas bond stayed enforcement of the *support-modification order*. McKinney's conduct was no different than any other appellant seeking to stay a judgment while appealing to this Court. Thus, we find it was error for the chancellor to cast his actions as willfully and deliberately disobeying her order. Because McKinney should not have been held in contempt, we reverse and render the contempt

20

finding.

### IX.  Attorney's Fees

¶49.   Chancellors have broad discretion to award attorney's fees.  **Huseth v. Huseth**, 135 So. 3d 846, 859 (Miss. 2014).  And attorney's fees are ordinarily appropriate when there is a contempt finding.  *See* **Gardner v. Gardner**, 795 So. 2d 618, 619 (Miss. Ct. App. 2001).  But here, we find the chancellor wrongly held McKinney in contempt.  Because we reverse and render that decision, we must also reverse and remand the *automatic* attorney's-fees award relating to Hamp's contempt motion.  *Cf.* **Lahmann v. Hallmon**, 722 So. 2d 614, 623 (Miss. 1998).  On remand, the chancellor has discretion to award attorney's fees to Hamp but must consider the **McKee** factors in doing so.  *See* **McKee v. McKee**, 418 So. 2d 764, 767 (Miss. 1982).

### Conclusion

¶50.   We find the chancellor properly considered McKinney's signing bonus as gross income when crafting her child-support order.   We likewise affirm the chancellor's determination that the statutory child-support guidelines were reasonable and applied, as well as her decision to award a retroactive modification to June 16, 2015.

¶51.   But because the chancellor wrongly divided the award over five years, rather than the four years of McKinney's contract, we reverse in part and remand for the chancellor to recalculate the child-support order to reflect a four-year contract.  Additionally, because the child-support order contains no findings about whether McKinney's retirement contributions are mandatory or any discussion on the financial consequences for each party concerning

21

K.M. as a dependent for taxes, we must remand on those issues as well. If on remand the chancellor finds the retirement contributions are mandatory, those amounts should be deducted from McKinney's gross income.

¶52.   As to the supersedeas bond, we affirm the chancellor's ruling that prospective, monthly, child-support payments are not money judgments within Rule 8(a) and therefore cannot be stayed by a clerk-approved supersedeas bond. But we reverse and render her contempt finding. Because we reverse and render the contempt finding, we must reverse and remand the chancellor's automatic grant of attorney's fees to Hamp.

¶53.   **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., COLEMAN, CHAMBERLIN AND ISHEE, JJ., CONCUR. BEAM, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**BEAM, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶54.   I agree with all of the majority opinion except for the decision to reverse the chancery court's contempt ruling and award of attorney's fees. Therefore, I concur in part and dissent in part.

¶55.   As the majority reiterates, the need for continued, monthly, child-support payments during the pendency of an appeal long has been recognized by this Court. *See* Maj. Op. ¶ 40 (citing **Petersen v. Petersen**, 238 Miss. 190, 118 So. 2d 300, 304 (1960)). The reason is obvious. Children have to eat and have a roof over their heads, and were a stay on child-support payments allowed–as a matter of course–in every case where a party challenges their

court-ordered support obligation by appeal, those affected foremost by the wait would be the children.

¶56. "Contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstances and both temporal and visual proximity, is infinitely more competent to decide the matter than [this Court]." *Varner v. Varner*, 666 So. 2d 493, 496 (Miss.1995) (quoting *Morreale v. Morreale*, 646 So. 2d 1264, 1267 (Miss.1994)). A contempt citation is proper only when the alleged contemnor willfully and deliberately has ignored the order of the court. *Mizell v. Mizell*, 708 So. 2d 55, 64 (Miss. 1998). Failure to comply with a court order is prima facie evidence of contempt. *McIntosh v. Dep't of Human Servs.*, 886 So. 2d 721, 724 (Miss. 2004). To rebut a prima facie showing of contempt, a person must show an inability to perform the order , that failure to comply was not willful, or that the order was ambiguous or uncertain. *Evans v. Evans*, 75 So. 3d 1083, 1087 (Miss. Ct. App. 2011). "Contempt is an issue of fact to be decided on a case-by-case basis. *R.K. v. J.K.*, 946 So. 2d 764, 777 (Miss. 2007). Resolution of a contempt matter by and large turns upon credibility of the contemnor, the assessment of which lies within the province of the trial judge sitting as trier of fact. *Mizell*, 708 So. 2d at 64.

¶57. Here, the chancery court found that McKinney willfully chose not to abide by the court's child-support order because, based on McKinney's testimony, he had received advice from his mother, financial advisor, and attorney not to abide by the court's order. I find no manifest error in the chancery court's ruling.

¶58. While this Court has recognized that advice from counsel may constitute a factor for

23

the trial court's consideration in its determination as to whether the party willfully ignored the order of the court, it has never held or suggested that it constitutes an automatic defense.[10] *See generally R.K.*, 946 So. 2d at 777-78 (chancellor acted within her discretion but not holding father in contempt when he relied upon advice of counsel in stopping child support payments); *see also Mizell*, 708 So. 2d at 64 (same).

¶59.    As a matter of practice and common sense, courts should be wary of such claims. *United States v. Remini*, 967 F.2d 754, 758 (2d Cir. 1992), helps illustrate why.

¶60.    There, the Second Circuit rejected the claim by a defendant convicted of criminal contempt that a "good faith reliance on advice of counsel is a defense to criminal contempt." At trial and on appeal, the defendant argued the Supreme Court's decision in *Cheek v. United States*, 498 U.S. 192, 111 S. Ct. 604, 610–11, 112 L. Ed. 2d 617 (1991), which held that a good faith misunderstanding of the law is a defense in a tax prosecution. *Remini*, 967 F.2d at 757. The Second Circuit found the defendant's reliance on *Cheek* misplaced. *Id*. at 758. The Second Circuit noted that *Cheek* first reiterated the general rule that "ignorance of the law or mistake of law is no defense to criminal prosecution[, which] is deeply rooted in the American legal system." *Id*. (quoting Cheek, 498 U.S. at 199). But *Cheek* recognized an exception to this rule in the tax prosecution before it, due to the complexity of tax law and proliferation of tax statutes and regulations that sometimes have made it difficult for average citizens to know and comprehend. *Id*. Distinguishing *Cheek*, the Second Circuit said:

---

[10] That McKinney also relied on his mother's and his financial advisor's advice need not be seriously entertained–except to say that it likely exacerbated the chancellor's reason for rejecting McKinney's excuse.

24

"There is nothing so complex about the law of contempt as to set it apart from the rest of the criminal law to which 'ignorance is no defense.'" *Id*.

¶61. The Second Circuit also noted *United States v. Ryan*, 402 U.S. 530, 533, 91 S. Ct. 1580, 1582, 29 L. Ed. 2d 85 (1971), as an analogous example in support of its reasoning for rejecting the defendant's claim. *Remini*, 967 F.2d at 757-58. The *Ryan* Court said:

> [W]e have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order . . . prior to review of that order, and with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal.

*Ryan*, 402 U.S. at 533.

¶62. The same principle must apply in child-support matters for the reasons expressed above. Here, the chancery court's new child-support order, entered on April 27, 2016, was not uncertain or ambiguous, as was the support order at issue in *McKnight v. Jenkins*, 155 So. 3d 730 (Miss. 2013), cited to by the majority. *See* Maj. Op. ¶ 47. Nor was McKinney incapable of complying with the court's order, as the record clearly illustrates. McKinney simply chose not to do so.

¶63. And this forced Hamp to have to file a motion for contempt on June 30, 2016. It was not until after the fact that McKinney then sought and obtained a supersedeas bond under Mississippi Rules of Appellate Procedure. 8(a), approved by the chancery clerk on July 14, 2016, which, as the majority finds, was not a proper measure.

¶64. That McKinney continued to abide by a previous support order is of no moment. McKinney became subject to the chancery court's new support order, which the record

25

illustrates he willfully and deliberately disregarded.

¶65.   For these reasons, I would not contradict the chancery court's discretion on this issue. Finding no manifest error in the chancery court's contempt ruling, I would affirm that ruling and the chancery court's award of attorney's fees.

**KING, J., JOINS THIS OPINION.**