# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01270-COA

**SCOTT ALLAN LAGEMAN**                                        **APPELLANT**

**v.**

**SONYA LEIGH (SZYMANSKI) LAGEMAN**                           **APPELLEE**

DATE OF JUDGMENT:              05/30/2019
TRIAL JUDGE:                   HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:     DESOTO COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:       A. E. (RUSTY) HARLOW JR.
                               KATHI CRESTMAN WILSON
ATTORNEYS FOR APPELLEE:        CHARLES E. WINFIELD
                               ASHLYN BROWN MATTHEWS
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   AFFIRMED - 03/23/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.    Sonya and Scott Lageman were granted a divorce on the ground of irreconcilable differences by the Chancery Court of DeSoto County on May 1, 2019. After a one-day trial and pursuant to their divorce decree entered on May 30, 2019, the court ordered in part: (1) Scott should pay monthly child support to Sonya in the amount of $4,000.00; (2) Scott should pay $200.00 into each of the minor children's "529 College Funds" each month until the children enter college; (3) Scott should receive certain personal property valued at $75,500.00; (4) Sonya should receive certain personal property valued at $35,000.00; (5)

Sonya should receive cash assets in the amount of $163,043.77[1]; (6) Scott should receive cash assets in the amount of $122,543.78[2]; (7) Sonya should receive her IRA in the amount of $108,000.00 and $650,258.85 from Scott's Federal Express (FedEx) Retirement Savings Account; (8) Scott should receive the remaining $652,169.22 in his FedEx Retirement Savings Account and the balance of his two T. Rowe Price accounts in the amount of $108,089.64; and (9) Sonya should receive forty-five percent of the value of Scott's pension plan with FedEx as of May 1, 2019.

¶2.    Aggrieved by portions of the chancery court's decree, Scott filed a motion for reconsideration and motion for clarification on June 10, 2019, which was ultimately denied. On August 8, 2019, Scott filed his notice of appeal and asserted three issues for this Court's consideration on appeal, including (1) whether the chancery court erred by failing to classify and consider the value of the marital **and** separate portions of Scott's FedEx pension account and FedEx retirement account in its equitable distribution analysis; (2) whether the chancery court erred in ordering Scott to pay child support in the amount of twenty percent of his monthly adjusted gross income, considering that his annual adjusted gross income exceeded $100,000.00; and (3) whether the chancery court erred in failing to consider other pre-marital assets owned by Scott in conducting its equitable-distribution analysis. Finding no error, we affirm the chancery court's ruling.

---

[1] Sonya received more cash assets than Scott to cure the discrepancy in the division of personal property.

[2] The cash assets referenced in the court's order derive from the monies held in counsel's trust account for the sale of the lake house as well as monies held in the parties' respective checking accounts for cashed out insurance policies.

## FACTS AND PROCEDURAL HISTORY

¶3.     Scott and Sonya were married on July 3, 2002, and had two minor children, L.L. and B.L.[3]  At the time of the trial, Scott was employed as a pilot for FedEx and Sonya was employed part-time as an occupational therapist at Olive Branch Methodist Hospital.  Scott began working for FedEx in April 1996, a little over six years prior to his marriage to Sonya.  Scott started working with FedEx as a handler and worked his way up to a pilot position.  At the time of trial, Scott had just begun his twenty-fourth year with FedEx and reported a monthly adjusted gross income of $21,386.00.  At the beginning of the marriage, Sonya was employed as a commercial real estate leasing agent.  Approximately a month after the marriage, Sonya enrolled in occupational therapy school full-time and graduated in December 2004.  Sonya worked full-time at a clinic as an occupational therapist until L.L. was born in 2005.  After L.L. was born, Sonya worked part-time in 2005 until 2011 when she then became a full-time stay-at-home mom.  Following the parties' separation, Sonya began working again four days per week at Olive Branch Methodist Hospital.  At the time of trial, Sonya reported a monthly adjusted gross income of $2,972.09.

¶4.     Throughout the marriage, the parties and their children enjoyed a comfortable lifestyle which included a 3,400 square-foot home with an approximate value of $350,000.00 and a swimming pool.  Further, the parties owned a vacation home referred to as the lake house.[4]  Along with the accumulation of additional personal property including vehicles, furniture,

---

[3] Initials will be used in an effort to protect the identity of the children.

[4] The parties' lake house was sold prior to trial, and the net proceeds totaling $112,58.55 were placed in trust pending the final decree of divorce.

electronics, jewelry, guns, a boat, kayaks, and four-wheelers. The parties also amassed a significant number of financial accounts of considerable value. Their financial accounts included the following: a checking account in Sonya's name valued at $50,000.00,[5] a checking account in Scott's name valued at $123,000.00,[6] an individual retirement account (IRA) in Sonya's name valued at $108,000.00, two T. Rowe Price accounts in Scott's name valued at approximately $69,584.77 and $38,504.87, Scott's FedEx retirement account valued at approximately $1,302,428.07, and Scott's FedEx pension account for which no value was ever provided for either at the beginning of the marriage or the date of the trial. Additionally, the parties maintained a 529 account[7] and life insurance policy for each minor child. The parties did not dispute the fact that the 529 accounts and the children's life insurance policies should continue to be maintained for the children's future benefit.

¶5.     On February 8, 2018, Sonya filed a complaint for divorce and temporary relief. In her complaint, Sonya alleged adultery, habitual cruel and inhuman treatment, or, in the alternative, irreconcilable differences, as her grounds for divorce. On March 8, 2018, Scott filed an answer to Sonya's complaint and denied the allegations of adultery and habitual cruel and inhuman treatment. On April 22, 2019, Scott filed a counter-complaint for divorce wherein he also alleged adultery, habitual cruel and inhuman treatment, or, in the alternative,

---

[5] The funds in Sonya's checking account derived from the cash proceeds of her life insurance policy.

[6] Scott's checking account included the cash proceeds of his life insurance policy and USSA investment account totaling approximately $97,837.22.

[7] The two 529 accounts were established as college funds for L.L. and B.L.

irreconcilable differences, as his grounds for divorce. Prior to trial on May 1, 2019, Scott and Sonya stipulated to a divorce on the ground of irreconcilable differences; however, they submitted to the chancery court for a determination of the remaining issues of child support, alimony, equitable division of real and personal property, and equitable division of marital debt. After a one-day trial, the chancery court rendered its decision on the record that same day and the decree of divorce was subsequently entered on May 30, 2019. Aggrieved by the chancery court's decree, Scott filed a motion for reconsideration and motion to clarify on June 10, 2019, requesting that the chancery court reconsider its ruling on the equitable distribution of his FedEx pension account and clarify the award of alimony prior to the sale of the marital home. After a hearing on July 22, 2019, the chancery court entered an order denying Scott's motion for reconsideration on July 23, 2019. Scott filed his notice of appeal on August 8, 2019.

## STANDARD OF REVIEW

¶6. "This Court's scope of review in domestic-relations matters is strictly limited." *Faerber v. Faerber*, 150 So. 3d 1000, 1005 (¶11) (Miss. Ct. App. 2014) (quoting *Curry v. Frazier*, 119 So. 3d 362, 365 (¶8) (Miss. Ct. App. 2013)). "A chancellor's findings will not be disturbed when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Id*.

## ANALYSIS

I. **Whether the chancery court erred by failing to classify and consider the value of the marital and separate portions of Scott's**

5

**FedEx pension account and FedEx retirement account in its equitable-distribution analysis.**

¶7. Scott argues that the chancery court failed to value his FedEx pension account and FedEx retirement account or classify the portions of the accounts as either marital or separate. He further argues that the court erred in awarding Sonya portions of those accounts that he alleges were his separate property.

¶8. When determining an equitable division of assets, the chancery court is tasked with first classifying the assets as either marital or non-marital. *Hemsley v. Hemsley*, 639 So. 2d 909, 914-15 (Miss. 1994). "The burden is upon one claiming assets to be non-marital to demonstrate to the court their non-marital character. This burden goes beyond a mere demonstration that the asset was acquired prior to marriage." *A & L Inc. v. Grantham*, 747 So. 2d 832, 839 (¶23) (Miss. 1999) (citing *Hemsley*, 639 So. 2d at 915). Once the assets have been classified, the chancery court must value and equitably divide the property according to the guidelines set forth in *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). While the list of considerations outlined in *Ferguson* is not exclusive, the Mississippi Supreme Court suggests that each factor be considered, where applicable, in an equitable division analysis. *Id*. The factors set forth in *Ferguson* include:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>
>> a. Direct or indirect economic contribution to acquisition of the property;
>
>> b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Id*. If a party fails to provide accurate or sufficient information or cooperate in the valuation of an asset, the chancellor is entitled to proceed on the best information available to him or her. *Messer v. Messer*, 850 So. 2d 161, 170 (¶43) (Miss. Ct. App. 2003). "It is incumbent upon the parties, and not the chancellor or opposing party, to prepare evidence touching on matters pertinent to the issues to be tried." *Pond v. Pond*, 302 So. 3d 1236, 1240 (¶13) (Miss. Ct. App. 2020) (quoting *Seymour v. Seymour*, 960 So. 2d 513, 518 (¶11) (Miss. Ct. App. 2006)). Pursuant to the chancery court's prior request for an asset table, Sonya provided an asset table for the court's benefit during trial that identified, described, and valued all of the

7

parties' assets. Scott did not provide a competing table of assets for the court's consideration.

### A.    FedEx Pension

¶9.    In its analysis on the record regarding Scott's FedEx pension, the chancery court specifically stated that "I'm going to award Mom 45 percent of that value as of today's date, and the reason I'm not doing that 50/50 is because Dad was contributing to this pension for six years before [marriage]." The chancery court specifically made a finding consistent with the facts presented that a portion of the pension was acquired before the marriage and that a portion was acquired during the marriage. Scott did not provide the court with any valuation of the pension at the time of marriage or at the time of trial. In fact, he failed to disclose in any shape or form his pension on his Rule 8.05 financial statement.[8] Sonya's asset table listed Scott's pension account as a marital asset with an "unknown" value to be split by the parties. Scott did not offer any additional evidence at trial to dispute Sonya's asset table. The lack of information considering the value of Scott's pension at any particular point in time gave rise to the court's speculation that the amount contributed six years before the marriage was substantially less than the amounts contributed during the seventeen-year marriage. Scott started with FedEx as a handler and worked his way up over the years to pilot and the pay scale he enjoyed at the time of the divorce. Given the limited information regarding the pension account, the court ordered a 45/55 split to account for the pre-marital portion. We find that the court properly considered the combined nature of the marital and

---

[8] UCCR 8.05.

personal property status of this account and awarded an equitable distribution of it according to the limited information placed before the court.

### B. FedEx Retirement

¶10. Much like the FedEx pension account, Scott did not give a specific monetary value for the portion of his FedEx retirement account, which he alleged accumulated prior to the marriage. Sonya listed the FedEx retirement account on her asset table as a marital asset with a value of $1,302,428.07 and requested that the account be split between the parties. Scott testified at trial that he accumulated a portion of the retirement account prior to the marriage, but he admitted that a significant portion of the account was acquired while he was married to Sonya. He failed to provide any testimony or evidence as to a specific monetary value of his retirement account at the time of marriage. He testified that he agreed that the account should be split but did not testify as to the specific way in which he thought the chancery court should make the division. After discussing the factors set forth in *Ferguson*, the chancery court stated, "Looking at all of those factors, I feel like a 50/50 division of y'all's assets is appropriate, and I am basically making a 50/50 division of your assets." Given the absence of testimony to the contrary the chancery court further stated:

> Of everything that is listed on your asset table, we determined that all the property was marital except for things that are listed on Line 18, 19, 27, and 28; and those were things that were the children's property and y'all all agreed that's the children's, its owned by them, and should not be considered in a division of your property.

Given the lack of testimony and evidence as to the values of Scott's FedEx retirement account prior to marriage, the chancery court did not err in the classification, valuation, and

9

distribution of this account.

> **II.** **Whether the chancery court erred in ordering Scott to pay child support in the amount of twenty percent of his adjusted gross income, considering that his annual income exceeded $100,000.00.**

¶11. Scott argues that the chancery court erred in ordering him to pay twenty percent of his adjusted gross income in child support, based on the fact that his annual adjusted gross income exceeded $100,000.00. Further, Scott argues that the child support award of $4,000.00 was unreasonable because it exceeded the children's monthly expenses totaling $3,695.00 listed on Sonya's Rule 8.05 financial statement.

¶12. Pursuant to Mississippi Code Annotated section 43-19-101(4) (Rev. 2015), the chancery court is required to make a written finding as to whether the application of the child-support guidelines is reasonable where a party's annual adjusted gross income exceeds $100,000.00. In *McKinney v. Hamp*, 268 So. 3d 470, 477 (¶31) (Miss. 2018), the supreme court elaborated on the chancery court's responsibilities under Mississippi Code Annotated section 43-19-101(4) by stating, "All that was required was for the chancellor to find, in writing, that the standard, statutory, fourteen-percent guideline should apply. And she did." In *McKinney*, while the chancery court was required to make a written finding as to the reasonableness of applying the guidelines, a further analysis was not required because the court did not ultimately deviate from those guidelines. *Id.* As applicable in the case sub judice, the child-support guidelines provide that there is a rebuttable presumption that a child-support payor should be required to pay twenty percent of his adjusted gross income for the benefit of two children. Miss. Code Ann. § 43-19-101. However, the Mississippi

10

Supreme Court has noted that the statutory guidelines do "not control per se the amount of a child support award. Rather, the specific award amount must be set by the chancellor, who has special knowledge of the actual circumstances." *Chesney v. Chesney*, 910 So. 2d 1057, 1061 (¶7) (Miss. 2005) (internal quotation marks omitted). Further, in *Ali v. Ali*, 232 So. 3d 770, 777 (¶21) (Miss. 2017), this Court held that it was not an abuse of discretion for a chancery court to "consider the standard of living to which the child is accustomed in deciding what amount of support is reasonable."

¶13. Scott was ordered to pay $4,000.00 per month in child support for the benefit of his two minor children. This amount was less than twenty percent of his monthly adjusted gross income; however, the court ordered that he pay an additional $200.00 per month into the children's 529 accounts until such time that the children enter college. The $4,000.00 monthly child support obligation plus the $200.00 monthly obligation to be deposited into the children's 529 accounts was just shy of twenty percent of Scott's adjusted gross income and the statutory requirement. In its ruling on the record, the chancery court specifically referenced its obligation to make a specific finding pursuant to the Mississippi Code Annotated section 43-19-101(4) and stated, "if a parent makes in excess of $100,000.00 a year, then the Court has to make a finding on the record that I think that amount is proper, you know, that I shouldn't deviate [from] it." In the next three pages of the trial transcript, the chancery court discussed in detail the trial testimony, both parties' Rule 8.05 financial statements, the expenses of the children, their accustomed lifestyle to validate its compliance with the statute, and the reasonableness of the child-support award. More specifically, the

chancery court noted on the record that the $3,700.00 that Sonya listed on her Rule 8.05 financial statement for the children's expenses did not include "housing, utilities, the cost of transporting the children, the providing a telephone and a television, and pet expenses, and pest control, and household supplies, and maintenance of the house and the yard and other things that the children are going to benefit from." Further, the chancery court considered the fact that the children were approaching their teenage years and their expenses were greater than those of an infant. Finally, the chancery court addressed the children's established standard of living and stated, "I don't really think that the expenses are that excessive because I want to make sure that your children continue to live in the standard that they are accustomed to living and have the extra things that they are accustomed to having." The chancery court fully addressed and reconciled the difference between the children's expenses listed on Sonya's Rule 8.05 financial statement and the amount of child support awarded. Additionally, the chancery court addressed the requirements of Mississippi Code Annotated section 43-19-101(4) within the written decree of divorce and stated, "[T]he Court pursuant to M.C.A. § 43-19-101, sets forth its written finding on the record as follows . . . ." As a result of the chancery court's thorough analysis of its child support award pursuant to Mississippi Code Annotated section 43-19-101(4) on the record and within its written decree of divorce, we find no error in the award of child support.

      **III.**    **Whether the chancery court erred in failing to consider other pre-marital assets owned by Scott in conducting its equitable-distribution analysis.**

¶14. Scott argues on appeal that the chancellor failed to consider the marital property that

12

he brought into the marriage in its equitable-distribution analysis. More specifically, Scott owned a home for approximately one and a half years before his marriage to Sonya, which they referred to at trial as a "little house in midtown." The parties continued to live in this house for approximately four years after the marriage. Scott did not provide any information at trial regarding the value of the home at the time of marriage, the value at the time the home was sold, what the couple did with the proceeds from the sale of the home, or whether the proceeds were used to purchase their current marital home.

¶15.    In *Stewart v. Stewart*, 2 So. 3d 770, 773 (¶8) (Miss. Ct. App. 2009), this Court addressed the re-classification of non-marital assets to marital assets. Much like the case sub judice, in *Stewart*, the husband purchased a home prior to the marriage. There was conflicting testimony at trial as to whether the couple lived in the home for three years or seven years during the marriage; however, the home was ultimately sold and the proceeds were put into the construction of their "marital property" residence. This Court held:

> [W]hen separate, non-marital property is commingled with marital property the separate property can lose its characterization as such and become marital property subject to equitable distribution. . . . Consequently, non-marital assets may lose their characterization as such if the party commingles the asset with marital property or uses them for familial benefit. . . . Although Carey owned the house prior to his marriage to Bessie, the property gained status as a marital asset upon its prolonged use as their family home.

*Id*. at 773 (¶9) (internal quotation marks omitted).

¶16.    In this case, the chancery court was provided absolutely no information or evidence concerning the value of Scott's "little house in midtown" or what was done with the sale proceeds once it was sold. The parties provided the court no information whether the

13

proceeds of the sale were kept separate or commingled. The only information provided was that the home was the marital home for approximately four years and then sold sometime thereafter. Therefore, we find no error by the chancery court in failing to consider Scott's home purchased prior to marriage and sold four years after the marriage as a non-marital asset in its consideration of equitable distribution.

## CONCLUSION

¶17.    After review, we find that the chancery court did not err in its classification of assets and equitable division of the marital assets including Scott's FedEx pension account and FedEx retirement account. Further, we find that the chancery court complied with the requirement set forth in Mississippi Code Annotated section 43-19-101(4) and therefore affirm the award of child support. Finally, we find that the chancery court did not err in failing to consider Scott's previously owned home in Memphis in its equitable-distribution analysis. Therefore, we affirm the ruling of the chancery court.

¶18.    **AFFIRMED.**

   **BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**

14